Billy Don CATO, Appellant,

v.

The STATE of Texas, Appellee.

No. 51183.

Court of Criminal Appeals of Texas.

March 3, 1976.

Rehearing Denied March 31, 1976.

Vern F. Martin, Midland (Court-appointed), for appellant.

James A. Mashburn, Dist. Atty., Jack K. Rusty Wall, Asst. Dist. Atty., Midland, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury, appellant was convicted of murder. Punishment was assessed at life imprisonment.

The indictment alleged the cause of death as being "by strangling her with his hands, and by strangling her with a cord, and by strangling her with a wire, and by strangling her with a belt, and by strangling her in a manner to the Grand Jurors unknown." [1]

Considering the evidence in the light most favorable to the verdict and judgment, the record reflects that on May 27, 1974 at about 12:50 p. m., appellant stopped his car in front of the Midland Memorial Hospital. He entered the hospital and said to Tresa Calwell, a registered nurse, and Kenneth Truelove, an orderly: "My wife is out in the car. She is dead, and I killed her." They went to the car and found the body of Shirley Cato "lying kind of over in the front seat—slumped over." They checked her for vital signs, "pulse, respiration, anything of this type, and did not find any." They found a "sort of blue, purplish markings around the middle of the neck." Calwell testified that in her opinion Shirley Cato was dead when she saw her. During this investigation at the car, appellant stated: "She has been asking for this for ten years." When Truelove found a red-handled paint scraper under the seat, appellant stated: "That is not what I used."

Lieutenant Luckey of the Midland Police Department and Mickey Clark, criminal investigator for the sheriff's office, went to the hospital in response to a call from Calwell, Luckey read to appellant his Miranda and Art. 38.22, V.A.C.C.P., rights, during which appellant stated that he understood "but I don't know why we are going through all this. I have already told you that I killed her." After receiving the statement of his rights, appellant agreed to show the officers where the killing occurred, and went with Officer Clark, directing him to a site in Midland County where, he stated, the trouble occurred.[2] Car tracks were found there which matched the tires of appellant's car. A man's belt, a three foot length of radio antenna wire, and some white nylon cord were found in appellant's car.

Evidence of a mortician and of an autopsy report showing the cause of death as strangulation was introduced.

Appellant testified to a long-lasting series of troubles, quarrels, violence, etc. between himself and his wife, the deceased, dating back approximately ten years. They had been divorced for about two years, and subsequently remarried. They were separated at the time of the offense, and she had filed divorce proceedings. Their children were with her.

He went to the house in Midland where she and the children were staying with friends to discuss some of their marital problems. While they drove and talked, an argument began. He stopped the car, and the argument continued. As to what happened next, he testified:

". . . And I said, 'All right, woman. I'm going to go get my kids, go back home, and you can stay here, until your divorce, whore around all you want to.' She got—the last thing she hollered was,

---

1. An indictment in a murder case may, in a single count, allege jointly different means of killing without rendering the indictment duplicitous. See *Gentry v. State*, 172 Tex. Cr.R. 345, 356 S.W.2d 793, 797.

2. It was in this manner that venue was established in Midland County.

'You F. and S.O.B.', and the last thing I remember—and from that I seen a hand coming toward me. My head exploded. I remember hearing my glasses hit the dash. I don't know how long I was there. I don't know what happened. But when I came to, she was sitting over there on her side. She had her hands on her throat like this. And she was looking at me. And I jumped over there—I was talking to her, but I don't know exactly what I asked her. But I took her hands off of her throat, and there was a knot. And I screamed, started asking God to not let her die. And then I realized I had to get her to the hospital. I found my glasses on the floorboard, and turned the car around. I went back around the curve. And then there was just a bubbling or surging down inside, started rushing all over me, and from there I don't know where I went. The next thing I remember, there was a white uniform, a nurse. I remember being in a bathroom washing my face."

He testified that he later found out that he had a blow on the nerve centers of his neck, from which he had suffered pain ever since. He said that his wife had studied karate, and had on previous occasions struck him and he had seen her use karate blows on others. He did not remember being struck by deceased on this occasion, nor did he know whether he choked her or not.

Appellant initially complains of the refusal of the court to charge on aggravated assault. He contends that his testimony that he did not intend to kill deceased raised a fact issue of the lesser offense.

■ Appellant was indicted for murder under V.T.C.A. Penal Code Sec. 19.02(a)(1),[3] and not (a)(2). Compare *Fazzino v. State*, Tex.Cr.App., 531 S.W.2d 818 (1976), in which the indictment was under Sec. 19.-

02(a)(2), which does not contain the element of intent to kill. Sec. 19.02(a)(1) does contain the element of intentionally or knowingly causing death, and aggravated assault is a lesser included offense. See V.T.C.A. Penal Code, Sec. 22.01, Sec. 22.02. Where the prosecution is under Sec. 19.02(a)(1), supra, and the injuries causing death are inflicted without the use of a weapon deadly per se, the court should charge on aggravated assault provided the evidence raises the fact issue of a lack of intent to kill. *Matheson v. State*, Tex.Cr.App., 508 S.W.2d 77; *Hargrove v. State*, Tex.Cr.App., 501 S.W.2d 878. In each of those two cases, the evidence reflected acts of the accused indicating a lack of intention to kill.

The court instructed the jury that before it could find appellant guilty of murder it must find from the evidence beyond a reasonable doubt that he did "intentionally and knowingly cause the death" of Shirley Cato by strangling her (in one of the ways alleged in the indictment), and that unless it so found beyond a reasonable doubt, or if it had a reasonable doubt thereof, it should acquit him of murder. It next charged on voluntary manslaughter, requiring the same findings as to intent and knowledge. See V.T.C.A. Penal Code, Sec. 19.04. The charge also included instructions on the law of self-defense. Appellant's request for a charge on aggravated assault was denied.

The evidence relied on by appellant as requiring submission of aggravated assault is his testimony as follows:

"Q Did you fabricate a plan, Bill, to go and do away with your wife?

"A The answer to that is absolutely not, no. In no way did I want her dead.

"Q Did you intend—do you recall any intent on your part to kill her at any time out there?

"A No, sir. It never entered my mind once.

**3.** Sec. 19.02 Murder
"(a) A person commits an offense if he:
  "(1) intentionally or knowingly causes the death of an individual;

"(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual, or . . . ."

"Q   Do you this minute really know whether or not you did it?

"A   This very minute, I don't know.  I don't know if I did or not   .   .   .

    *     *     *     *     *     *

"Q   .   .   .   When you left Odessa, did you intend to commit suicide?

"A   If I couldn't get them back together again, that was my intentions.

"Q   But certainly not to harm your wife?

"A   Certainly not."

Prior testimony of appellant, quoted supra, was to the effect that while he and his wife were sitting in the car quarreling with each other, he saw a hand coming toward him, his head exploded, his glasses hit the dash, and he passed out and remembered nothing further until he came to and saw her sitting with her hands around her throat.  He gave no testimony of the assault upon her or of any conscious actions reflecting an absence of an intention to kill.

■  From a review of appellant's testimony, including all that is quoted herein, we conclude that the record does not reflect that a fact issue requiring the submission of aggravated assault was raised.  *Smith v. State,* Tex.Cr.App., 411 S.W.2d 548; *Dickson v. State,* Tex.Cr.App., 463 S.W.2d 20; *Preble v. State,* Tex.Cr.App., 374 S.W.2d 444, cert. den. 379 U.S. 882, 85 S.Ct. 151, 13 L.Ed.2d 88.

■  Appellant next contends that the court erred in refusing his request that the charge include instructions on insanity as a defense.  He argues that testimony given by him of his having visions concerning his wife a few days prior to the offense and of his alleged traumatic amnesia about the facts surrounding the offense raised such issue.

We have thoroughly reviewed the entire record and find nothing which indicates that, at the time of the conduct with which he is charged, appellant, as a result of mental disease or defect, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.  See V.T.C.A. Penal Code, Sec. 8.01.  See and compare *Cowles v. State,* Tex.Cr.App., 510 S.W.2d 608; *Valdez v. State,* Tex.Cr. App., 475 S.W.2d 786.

■  He also contends that the court erred in refusing to halt the trial and conduct a separate hearing on his present competency to stand trial, when defense counsel so requested.  This request was made on the fourth day of the trial, following the presentation of the State's prima facie case, appellant's evidence, and the State's rebuttal witnesses.  The trial court filed extensive findings in explanation of its denial of the request.

As the court stated in its findings, it had "numerous opportunities to observe the defendant's demeanor and ability to assist his counsel in the preparation of his defense," both during this trial and at pre-trial.  These findings detail the actions of appellant in the court's presence.  The court concluded that, based upon these observations, "the defendant was competent to stand trial, to assist his attorney in the presentation of his case, and to understand the substance of the charges pending against him."

We find that the record fully supports the findings and conclusions of the trial court.  The contentions of appellant as to the failure of the court to charge on the defensive issue of insanity, and also to hold a separate hearing on appellant's competency to stand trial, are without merit.  *Wages v. State,* Tex.Cr.App., 501 S.W.2d 105; *Ainsworth v. State,* Tex.Cr.App., 493 S.W.2d 517.

■  Appellant contends further that the court should have granted a mistrial when the foreman of the grand jury testified that deceased died from strangulation.

For proof of the allegation in the indictment that the strangling of deceased was "in a manner to the Grand Jurors unknown," the State used the foreman of the

grand jury. See *Gentry v. State,* 172 Tex. Cr.R. 345, 356 S.W.2d 793; *Brown v. State,* Tex.Cr.App., 475 S.W.2d 938, 946. During this witness' testimony, the following occurred:

"Q (By Mr. Wall): Mr. Bedford, after a diligent inquiry by the Grand Jury, was the Grand Jury able to determine the means by which the death was caused of Shirley Cato?

"A It was our opinion that it was by strangulation—

"MR. MARTIN: Excuse me, Your Honor.

"MR. WALL: That wasn't my question.

"MR. MARTIN: We object again to that.

"THE COURT: Sustained.

"MR. MARTIN: And I want the Jury instructed to disregard it.

"THE COURT: So instructed.

"MR. MARTIN: And because of the sensitivity of this particular witness, I want to again urge a motion for mistrial on the grounds it can't be withdrawn—

"THE COURT: Overruled.

"MR. MARTIN: Note our exception."

The prompt action of the court in sustaining appellant's objection and instructing the jury to disregard cured any error in the non-responsive answer of the witness. *Viges v. State,* Tex.Cr.App., 508 S.W.2d 76; *Hartman v. State,* Tex.Cr.App., 507 S.W.2d 553.

Thereafter, the witness testified that the grand jury, after diligent inquiry, was unable to ascertain the manner and means in which appellant was killed.

Appellant's fourth ground of error reads: "The trial court erred in allowing States witness, 'a pathologist,' to testify as to cause of death without a showing that diligence was exercised by the state to produce the witness who actually performed the autopsy."

On the afternoon that deceased's body was brought to the hospital, Justice of the Peace John Biggs held an inquest, and, after determining that she was dead, ordered an autopsy and named Dr. Martha Masden, a pathologist, to make it. She performed the autopsy that day, and filed her "autopsy protocol" or findings with Judge Biggs. He produced this report at the trial, where it was placed in evidence before the court, but not to the jury. The record reflects that on the Thursday before the Monday on which the trial commenced Dr. Masden left the State and went to New Jersey, and she was not available as a witness. In her absence, her partner Dr. Campbell testified to the cause of death, using for reference the official autopsy report prepared by Dr. Masden. This method was approved by this Court in *Whitfield v. State,* Tex.Cr.App., 492 S.W.2d 502. See also *Mahaffey v. State,* Tex.Cr.App., 471 S.W.2d 801; Art. 3731a, Sec. 1, V.A.Tex. Civ.Stats.

Appellant's complaint is that there was no showing of diligence by the State to produce Dr. Masden at the trial. The contention is without merit, and is overruled.

Lastly, appellant contends that the court erred in overruling his motion for a new trial, due to newly discovered evidence affecting appellant's claim of insanity and incompetency to stand trial.

A psychiatrist testified at the hearing on the motion that he had examined appellant prior to the trial, but had found nothing to indicate that appellant did not know the nature and consequences of his actions, or that he could not conform his actions to the requirements of the law. He had discussed his findings with counsel for appellant, who did not ask him to testify. If called upon to testify, his opinion would be the same as his report which was furnished the State and the appellant before the trial.

Appellant also relies upon testimony given by him in the absence of the prosecuting attorney and included in sheets of the statement of facts stapled together and opened by this Court. These show that appellant stated to the court that since the trial he

had remembered things about the offense that he could not remember during the trial. We have examined his record, and find that the trial court did not abuse its discretion in overruling the motion for a new trial.

The judgment is affirmed.

Opinion approved by the Court.