**Richard Lee DENNEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56074.**

Court of Criminal Appeals of Texas.

Nov. 9, 1977.

Appellants Motion for Rehearing Denied Dec. 14, 1977.

Tom Fleming, Brownsville, for appellant.

Selden N. Snedeker, Dist. Atty. and Joe K. Hendley, Asst. Dist. Atty., Brownsville, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of capital murder; the punishment, death.

On March 15, 1976, the body of Russell James Frey was found in a work shed near his travel trailer, located in the Rio Grande Valley near Harlingen. The body was badly decomposed and through the testimony of Dr. Charles Folsom, a pathologist, it was established that the deceased had been dead at least three or four days but that it was more likely that the deceased had been dead at least five days. Death was the result of strangulation with an electric cord.

James L. Burress, a neighbor of the deceased, testified that on March 10, 1976, at approximately 6:00 p. m., he had seen the deceased talking to two men. He stated that he observed the three men over a period of fifteen or twenty minutes at which time the deceased and the two men walked into the shed where the deceased's body was later found. He identified one of the men as the appellant but was unable to identify the other. He described the car the two men had driven as a solid black car with no chrome parts showing.

Dan Adair, a fifteen-year-old neighbor, testified that at 7:30 p. m. or 8:00 p. m. on March 9th or 10th, he had heard a power saw started followed by some screams coming from the shed owned by the deceased. He noticed a light coming from the shed and a car which he had not seen before.

On March 11, 1976, several items of personal property belonging to the deceased were found in a ship channel near Aransas Pass. Also on March 11, appellant, a resident of Aransas Pass, sold a coin collection to Sam Barrow. The appellant told Barrow he had inherited the coin collection. Several of the coins in the collection and the folders in which the coins were kept were identified as belonging to the deceased.

Janice Germany, the wife of Benny Charles Germany, an alleged co-conspirator, testified over objection that on March 10 her husband and the appellant used the car she and her husband owned. They owned a 1969 Ford which Janice Germany had painted a dark blue. She had painted all of the car including the chrome parts. She stated that in the early morning hours of March 11 her husband returned home with a small brown radio contained in a cardboard box. There was also blood on his clothing and shoes and he was wearing a shirt she did not recognize.

Over further defense objection, she was allowed to testify as to certain statements made by her husband at that time. Benny Germany told his wife that they had killed the "old man" and that the shirt he was wearing and the blood on his clothing were from the "old man." He told her to take the bloody clothing and box in which the radio was contained and dispose of them. She then got into their car and drove down Avenue A in Aransas Pass and threw the box out on the side of the road. During the day, she attempted to burn the clothing but was unsuccessful.

Danny Leimon testified that he had seen a small brown radio owned by the deceased prior to the commission of this offense. When he reentered the trailer after the deceased was killed he did not see the small brown radio.

Alice Salter, the owner of a cafe in Aransas Pass, testified for the defense and stated that the appellant had been a regular customer in her cafe. She testified that on March 8, 1976, she had a conversation with the appellant where he told her he had been to the Valley. During this conversation, the appellant told Alice Salter that he had made several purchases, including a coin collection, during this trip. She stated that she had not heard of Benny Charles Germany and that the appellant had come into her cafe almost every day after March 8th.

The appellant introduced testimony of several financial transactions he had made on March 9th and 10th. On those dates, appellant had withdrawn some money from his bank and paid several bills, including his rent and an insurance bill. Appellant also introduced his telephone bill which showed that he had made a call from Aransas Pass on March 9th at 10:46 p. m.

Appellant took the stand and testified that he did not leave Aransas Pass on either March 9 or March 10 accompanied by Benny Charles Germany. He stated that he had gone to see the deceased on March 7th to discuss the purchase of a truck but when the deceased decided not to sell the truck the appellant purchased the coin collection instead. He then sold the collection to Sam Barrow on March 11th.

In appellant's grounds of error one, two and five, he alleges that the trial court erred in admitting the testimony of Janice Germany as to the statements made by her husband, Benny Charles Germany, and in overruling the motion for mistrial on this basis. Appellant also contends that the introduction of Janice Germany's testimony violated Article 38.11, V.A.C.C.P.

In order for statements made by an alleged co-conspirator to be introduced into evidence, there must be evidence out-side of and independent of the statements which tends to establish the joint act of the parties. *Chapman v. State,* Tex.Cr.App., 470 S.W.2d 656. When viewed in the light most favorable to the jury's verdict, there is sufficient independent evidence to establish the conspiracy. The appellant was identified by a neighbor of the deceased, James Burress, as being at the scene of the crime on March 10 with another unidentified man. The description of the car driven by the two men, given by Burress, was similar to the type of car owned by the alleged co-conspirator, Benny Charles Germany. Janice Germany testified that on March 11 her husband returned with bloody clothing, a shirt which was the same size as worn by the deceased and a radio she had not seen prior to that night. The radio was of similar color and size as one which the deceased had owned. The appellant had sold a coin collection previously owned by the deceased. This evidence was sufficient to establish a conspiracy between Benny Charles Germany and the appellant, as found by the jury. However, in order to introduce the statements, the State must also prove that the statements made by the co-conspirator to a third party outside the presence of the accused were made in the furtherance of the conspiracy. *Lapp v. State,* Tex.Cr.App., 519 S.W.2d 443. Appellant argues that the conspiracy was terminated prior to the time Benny Charles Germany made the statements to his wife.

In *Helms v. State,* Tex.Cr.App., 493 S.W.2d 227, we faced a similar contention to that argued by the appellant. In *Helms,* one of the co-defendants telephoned his wife and instructed her to dispose of two guns which had been used in the commission of the crime. We held statements made by the co-defendant admissible as being in furtherance of the conspiracy.

In the instant case, the statements made to Janice Germany were for the purpose of disposing of the fruits of the crime and disposing of evidence that the crime had been committed, all in furtherance of the conspiracy and, therefore, admissible. *Williams v. State,* 170 Tex.Cr.R. 595, 343

S.W.2d 263; see also, *Colunga v. State,* Tex. Cr.App., 527 S.W.2d 285; *White v. State,* Tex.Cr.App., 451 S.W.2d 497; *Catching v. State,* Tex.Cr.App., 364 S.W.2d 691.

Appellant also contends that the testimony of Janice Germany was inadmissible under Article 38.11, V.A.C.C.P. The same contention was raised in the recent case of *Burns v. State,* 556 S.W.2d 270 (Delivered May 3, 1977), where we held:

"We find that the prohibition against spouses testifying against each other set forth in Article 38.11, supra, does not prohibit a spouse from testifying against his or her spouse's co-defendant if the co-defendant is tried separately."

Appellant's grounds of error one, two and five are overruled.

In his grounds of error four and six, appellant contends that the evidence is insufficient to sustain a conviction for the offense of murder. We recognize and apply the rule that every circumstantial evidence case must be tested by its own facts to determine the sufficiency of the evidence. *Indo v. State,* Tex.Cr.App., 502 S.W.2d 166; *Baker v. State,* Tex.Cr.App., 447 S.W.2d 172. Further, in determining whether circumstantial evidence is sufficient, the facts must be viewed in the light most favorable to the verdict. *Brown v. State,* Tex.Cr. App., 475 S.W.2d 938; *Carlisle v. State,* Tex.Cr.App., 549 S.W.2d 698.

Considering the record as a whole and viewing it in the light most favorable to the verdict, we find the evidence sufficient to support the judgment and grounds four and six are overruled.

Appellant, in his third and seventh grounds of error, contends that the trial court erred in failing to grant a mistrial based on the absence of a subpoenaed State witness and in allowing Dr. Folsom to testify. In this case, the State subpoenaed Dr. David Flory, the pathologist who performed the autopsy. Prior to trial, the State sought a motion for continuance based upon the fact that Dr. Flory would be out of Cameron County until after the date set for trial. The appellant opposed this motion and such motion was denied by the court.

During trial, the State called Dr. Charles Folsom, a pathologist and partner of Dr. Flory, who testified concerning the time and cause of death. Dr. Folsom had not seen the deceased's body, aided in the autopsy, or examined any tissue from the deceased. He based his testimony on the photographs taken at the scene of the crime and the "autopsy protocol" prepared by Dr. Flory. The appellant moved for a mistrial based on the absence of Dr. Flory.

In *Cato v. State,* 534 S.W.2d 135, this Court was faced with a similar contention as that raised in appellant's ground of error seven. In *Cato,* the autopsy was performed by a Dr. Masden who then prepared an "autopsy protocol" or report and filed it with the judge. At the trial, Dr. Masden's partner was allowed to testify as to the cause of death utilizing the report prepared by Dr. Masden. The method used in the instant case is almost identical to that method we approved in *Cato* and we overrule appellant's ground of error seven. See *Whitfield v. State,* Tex.Cr.App., 492 S.W.2d 502; *Mahaffey v. State,* Tex.Cr.App., 471 S.W.2d 801; *Burrell v. State,* Tex.Cr.App., 446 S.W.2d 323.

In moving for a mistrial due to the absence of Dr. Flory, appellant relies upon Article 24.03, V.A.C.C.P., which provides, in essence, that once a witness has been subpoenaed either party can rely upon that subpoena. In relying upon this statute, appellant called Dr. Flory during trial and moved for a mistrial when he failed to appear. However, Article 24.12, V.A.C. C.P., provides that if a witness fails to appear, the State or the defendant is entitled to have an attachment issued for the witness. In this case, appellant failed to request an attachment which is the proper remedy for an absent witness. In any event, appellant has failed to show how he has been harmed by the absence of Dr. Flory and there is no showing as to what he would have testified. *Brito v. State,* Tex. Cr.App., 459 S.W.2d 834; *Munoz v. State,* Tex.Cr.App., 435 S.W.2d 500. Appellant's third ground of error is overruled.

In his last ground of error, appellant contends that the trial court erred in admitting photographs taken of the deceased's body. The photographs complained of show the decomposed body of the deceased at the place where the offense was committed.

We have examined the photographs contained in the record and find that they do not fall within the exceptions enunciated in *Terry v. State*, Tex.Cr.App., 491 S.W.2d 161. The trial court did not err in admitting the photographs. *Martin v. State*, Tex.Cr.App., 475 S.W.2d 265. Appellant's final contention is overruled.

The judgment is affirmed.