TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00626-CR







Terinslo Lambert, Appellant



v.



The State of Texas, Appellee








NO. 03-94-00627-CR







Patrick Keith Miller, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NOS. 44,216 & 44,217, HONORABLE JOE CARROLL, JUDGE PRESIDING







PER CURIAM


 Following a joint trial, a jury found appellants guilty of capital murder. Act of
April 16, 1985, 69th Leg., R.S., ch. 44, § 1, 1985 Tex. Gen. Laws 434 (Tex. Penal Code Ann.
§ 19.03(a)(2), since amended). The State having waived the death penalty, the district court
assessed punishment in each cause at imprisonment for life.

 Appellant Lambert contends the evidence is legally and factually insufficient to
sustain his conviction. Appellant Miller also challenges the legal sufficiency of the evidence and
further contends that the testimony of an accomplice witness was not adequately corroborated. 
We will affirm both convictions.


SUMMARY OF EVIDENCE



1. Accomplice testimony.

 The accomplice, William Jennings, testified that he, Lambert, and Miller drove
around Killeen on the night of April 1, 1994, "looking for someone to rob." They were in
Lambert's sister's Suzuki Samurai truck, or "jeep." (1) Miller and Jennings were armed with 9 mm.
semiautomatic pistols. The three men eventually made their way to the Heather Glen subdivision
where, shortly after midnight, they saw a man outside a house at the intersection of Windsong and
Glenoak. Jennings and Lambert, who was carrying Miller's pistol, got out of the jeep intending
to rob the man, but he entered his house before they could do so. Just then, a car pulled into the
driveway of a nearby house on Glenoak. Lambert approached this vehicle on foot while Jennings,
who "was kind of nervous," walked the other way. When Jennings turned back to look for
Lambert, he saw him struggling with a man in the driveway. This man was identified through
the testimony of other witnesses as Christopher Walter, the murder victim. 

 As Jennings watched, Lambert and Walter wrestled each other to the ground. 
Jennings heard Walter say that he had the gun and heard Lambert plead for its return. Jennings
pulled his pistol and walked over to where Lambert and Walter were now standing. Jennings told
Walter, "Give him his gun back so we can go. Just give him the gun." Walter responded by
pointing Lambert's pistol at Jennings. Jennings turned and ran.

 Jennings met Miller, who was now driving the jeep, at the next corner. Jennings
told Miller what had happened and said, "We got to go." Miller replied, "We have got to go back
and get [Lambert]" and told Jennings to give him his pistol. Jennings did so. Miller then drove
around the block and slowly approached the house on Glenoak, where a small crowd had
gathered. Jennings did not see Lambert, but saw Walter, still armed with Lambert's pistol,
standing in front of the house. Jennings ducked when Walter pointed the pistol at the jeep. He
then heard Miller fire several shots. As Miller drove away, Jennings looked back and saw Walter
fall to the ground. Jennings told Miller, "Oh, man, I think you shot him." Miller tossed the
pistol in Jennings's lap and said, "I know."

 Within moments, a police car appeared behind the jeep. After a brief chase, the
jeep collided with a fence and came to a stop. Miller jumped from the vehicle and ran away. 
Jennings threw the pistol from the jeep, exited, and was arrested.


2. Other evidence.

 Christopher Walter's wife, Tiffany Walter, testified that she and her husband spent
the evening of April 1, 1994, with friends. As they arrived home with their infant son, she saw
a man walking on the other side of the street. When her husband exited their car, he was
confronted by a second man wielding a pistol. She identified this man as appellant Lambert. As
her husband struggled with Lambert, she locked the car to protect her son and ran next door for
help. Lambert followed her. "He was telling me to ask my husband to give him back the
weapon, and they were only 15 years old, and the weapon wasn't real. And then the last thing
he said was that they knew where we lived, and they would be back to get us." At this moment,
Walter saw a white jeep drive slowly past and heard shots. She ran back to her house and found
her husband lying in the driveway with a fatal gunshot wound to the head. Walter identified a
photograph of Lambert's sister's Suzuki Samurai as the white jeep she saw drive past her house
on the night in question.

 Several of the Walters' neighbors also testified. These witnesses described the
struggle between Christopher Walter and the assailant, Tiffany Walter's shouts for help, the white
jeep driving past the scene, and the sound of gunshots in a manner consistent with the testimony
summarized above. 

 Killeen police officer Andrew Pence was on patrol in the Heather Glen area when
he received a radio dispatch reporting a disturbance in which shots had been fired. As he drove
toward the scene of the shooting, Pence encountered a white jeep travelling at high speed. Pence
followed the jeep, which did not respond to the officer's emergency lights. When he reported his
actions to the dispatcher, Pence was told that the jeep was the suspect vehicle. Pence followed
the jeep through the subdivision until it collided with an iron fence at the end of a dead-end street. 
The driver of the jeep, identified by Pence as appellant Miller, exited the vehicle and ran from
the scene. Pence arrested the other occupant of the jeep, identified as Jennings. A 9 mm.
semiautomatic pistol was found on the ground near the jeep. Tests proved that this pistol was the
murder weapon. 

 Department of Public Safety officer Jesus Ramos also responded to the reports of
the shooting and pursuit. He found Miller hiding in a ditch approximately one-half mile from
where he abandoned the jeep. Miller was out of breath, his clothes were torn, and he was covered
with grass and weeds.

 Lambert fled on foot after the shooting, apparently pausing long enough to retrieve
his pistol. He made his way to the residence of Ann Williams and her family. Williams is
William Jennings's sister and her son Devoro Jennings is William Jennings's nephew. Lambert
gave Devoro Jennings a pistol and asked him to hide it. Jennings threw the weapon in the trash. 
Lambert was arrested later that day.


DISCUSSION



1. Corroboration of accomplice.

 The district court correctly instructed the jury that William Jennings, who was
under indictment for capital murder at the time of trial, was an accomplice as a matter of law. 
A conviction cannot be had on the testimony of an accomplice unless it is corroborated by other
evidence tending to connect the defendant to the offense committed. Tex. Code Crim. Proc. Ann.
art. 38.14 (West 1979). The corroboration is not sufficient if it merely shows the commission of
the offense. Id. Miller contends the State failed to corroborate Jennings's testimony insofar as
it concerns Miller's involvement in the offense.

 To determine whether an accomplice's testimony is corroborated, we eliminate that
testimony from consideration and determine whether the remaining evidence tends to connect the
accused to the offense. Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). The
corroborative evidence need not establish the defendant's guilt or directly link the defendant to
the offense, but is sufficient if it tends to connect the defendant to the offense. Id. Sufficient
corroboration may be supplied by proof that the defendant was at or near the scene of the crime
at or near the time of its commission or by proof of the defendant's flight after the crime. 
Passmore v. State, 617 S.W.2d 682, 684-85 (Tex. Crim. App. 1981). The presence of the
accused in the company of the accomplice is also a circumstance to be considered in determining
the sufficiency of the corroborating evidence. Id.

 As Miller correctly points out, he was not identified by any of the nonaccomplice
witnesses to the shooting. The police testimony, however, demonstrates that Miller was in the
company of the accomplice and driving the jeep from which the fatal shot was fired only minutes
after the shooting. Miller drove the jeep away from the scene of the offense at high speed and
sought to avoid apprehension by pursuing police officers. After crashing the jeep into the fence,
Miller fled on foot. The murder weapon was found beside the jeep. This evidence tends to
connect Miller to the murder of Christopher Walter and is, therefore, sufficient to corroborate
Jennings's accomplice testimony. Miller's second point of error is overruled.


2. Legal sufficiency of evidence.

 Both appellants contend the evidence is legally insufficient to sustain their
convictions for capital murder because the State failed to prove that Walter was murdered in the
course of a robbery or attempted robbery. Appellants argue that the robbery had been abandoned
or otherwise terminated before Walter was shot. Thus, appellants urge that the evidence shows
only a robbery or attempted robbery followed by an unrelated murder. See Ibanez v. State, 749
S.W.2d 804, 807-08 (Tex. Crim. App. 1986) (evidence insufficient where intent to steal was not
formed until after murder was committed); see also Watts v. State, 516 S.W.2d 414, 415 (Tex.
Crim. App. 1974) (proof of completed theft not required in robbery prosecution).

 A murder is committed in the course of a robbery or attempted robbery if it is
committed during or in the immediate flight after the robbery or attempted robbery. Robertson
v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993). If, in the attempt to carry out a
conspiracy to commit one felony another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed if the offense was committed in
furtherance of the unlawful purpose and was one that should have been anticipated as a result of
carrying out the conspiracy. Tex. Penal Code Ann. § 7.02(b) (West 1994). The district court
instructed the jury pursuant to section 7.02(b) in both causes. See Cordova v. State, 698 S.W.2d
107, 111 (Tex. Crim. App. 1985); Wilder v. State, 583 S.W.2d 349, 356 (Tex. Crim. App. 1979)
(law of parties applies at guilt stage of capital murder trial). 

 It is obvious that Lambert, Miller, and Jennings were engaged in a conspiracy to
commit robbery on the night in question. By arming themselves before beginning their hunt for
a suitable victim, the conspirators should have anticipated that carrying out the conspiracy could
result in a homicide. Flores v. State, 681 S.W.2d 94, 96 (Tex. App.--Houston [14th Dist.] 1984),
aff'd, 690 S.W.2d 281 (Tex. Crim. App. 1985). Lambert argues, however, that Walter's murder
was not committed in furtherance of the conspiracy because the robbery had been abandoned
before Walter was shot. See Deeb v. State, 815 S.W.2d 692, 697 (Tex. Crim. App. 1991)
(conspiracy can be terminated by failure). 

 As a general rule, a conspiracy is not terminated until everything has been done that
was contemplated to be done by the conspirators. White v. State, 451 S.W.2d 497, 500 (Tex.
Crim. App. 1969); Robins v. State, 117 S.W.2d 82, 84 (Tex. Crim. App. 1938). It is reasonable
to assume that conspirators ordinarily contemplate the avoidance of apprehension, regardless of
whether the crime that is the object of the conspiracy is successfully accomplished. Miller
returned to the scene of the botched robbery for the purpose of aiding Lambert's escape. When
Walter pointed the pistol at the jeep, Miller shot him. All three conspirators then fled. A rational
trier of fact could conclude that Miller murdered Walter in furtherance of the conspiracy and
during the immediate flight of the conspirators following the robbery attempt. See Denney v.
State, 558 S.W.2d 467, 469 (Tex. Crim. App. 1977) (conspiracy to rob and murder; statements
made one day after offense regarding disposition of fruits and evidence of crime were made in
furtherance of conspiracy).

 In determining the legal sufficiency of the evidence to support a criminal
conviction, the question is whether, after viewing all the evidence in the light most favorable to
the verdict, any rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154
(Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). Judged by
this standard, the evidence is sufficient to sustain the capital murder convictions of both
appellants. The first point of error in each cause is overruled.


3. Factual sufficiency of evidence.

 Lambert contends the evidence is factually insufficient to sustain his conviction. 
When conducting a factual sufficiency review, we do not view the evidence in the light most
favorable to the verdict. Instead, we consider all the evidence equally, including the testimony
of defense witnesses and the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319
(Tex. App.--Austin 1992, no pet.). We will set aside a verdict for factual insufficiency only if it
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed). 

 The defense called no witnesses in these causes and the evidence does not suggest
the existence of any alternative hypothesis other than Lambert's guilt. Finding the evidence
factually sufficient to sustain his conviction, we overrule Lambert's second point of error.

 The judgments of conviction are affirmed.


Before Justices Powers, Kidd, and B. A. Smith

Affirmed on Both Causes

Filed: July 12, 1995

Do Not Publish
1.   At trial, the witnesses consistently referred to this vehicle as a "jeep." The parties continue
this practice in their briefs. We will do likewise.