**Russell S. BYRD, Appellant,**

v.

**The STATE of Texas.**

**No. PD–0235–04.**

Court of Criminal Appeals of Texas.

Dec. 14, 2005.

Robert N. Udashen, Dallas, for appellant.

Charles Patrick Reynolds, Dallas, for state.

## *OPINION*

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, KEASLER, HOLCOMB and COCHRAN, JJ., joined.

The issue in this case is whether the admission into evidence at appellant's murder trial of a co-conspirator's out-of-court statement was reversible error.

Appellant was convicted of murdering the victim by striking him in the head with a barbell (which was also referred to at trial as a dumbbell). This occurred early Saturday morning in the apartment of appellant's brother (Randy). Randy testified at appellant's murder trial that he saw appellant strike the victim with a barbell. Randy's girlfriend (Steward) testified that she came out of the back bedroom of the apartment and saw appellant and Randy standing near the bleeding victim who was on the floor. Steward saw appellant holding a barbell. Steward did not see who struck the victim. Appellant told a fellow county jail inmate that he hit the victim with a barbell. Randy initially told the police and his work supervisor that he murdered the victim. Randy testified at trial that he made these admissions to

protect appellant and Steward. The evidence also shows that the victim's murder was not a pre-planned act.

The prosecution also presented evidence that appellant, Randy and Steward conspired to "hinder appellant's apprehension"[1] immediately after the murder occurred. To carry out this conspiracy, they went to great efforts to clean up the crime scene and to dispose of the victim's body and his car. Later the same day, Randy and Steward had a conversation during which Randy stated that they could not tell anyone about the murder. Randy also told Steward that he would take responsibility for the murder if anyone asked him about it. Steward testified at trial to these out-of-court statements by Randy with no objection from appellant.

Q. [PROSECUTION]: And was there any discussion about what had happened?

A. [STEWARD]: Yes, ma'am there was.

Q. And what was the discussion about?

A. He had went to sleep. And when he woke up, he was saying that we couldn't tell nobody. That if anybody came to him to ask him about it or whatever, he was going to tell them that he was the one that did it.

Q. That he was the one that did it?

A. Yes, ma'am.

Q. And when he told you that he was going to be the one to tell that he did it, did he say anything about protecting you or [appellant]?

A. Yes. He said that he wouldn't ever mention my name.

Q. What about [appellant]?

A. He didn't say anything about [appellant].

---

1. *See* TEX. PEN.CODE, § 38.05 (defining criminal offense of hindering apprehension or prosecu-

tion).

Steward also testified, over appellant's hearsay objection, to another out-of-court statement that Randy made to Steward during this conversation asking, "Why did [appellant] have to hit [the victim]?"

Q. [PROSECUTION]: Now, Saturday, when [Randy] had come over to your house, your apartment, did—you mentioned that y'all discussed what had happened; is that correct?

A. [STEWARD]: Yes, ma'am.

Q. And what did Randy tell you regarding who hit [the victim] with the dumbbell?

[THE DEFENSE]: Objection. Calls for hearsay.

[TRIAL COURT]: What was the timing of this again?

[PROSECUTION]: Saturday.

[TRIAL COURT]: What time are we speaking of?

[STEWARD]: Saturday afternoon.

[TRIAL COURT]: Was this before or after you talked to the police officers?

[STEWARD]: Before.

[TRIAL COURT]: Okay. Your objection is overruled.

A. [STEWARD]: [Randy] said—asked me why did [the victim] just keep doing it and why did [appellant] have to hit him.

During closing jury arguments, the prosecution argued that it really did not matter who struck the victim because the jury could find appellant guilty as a party

if it believed that he "assisted in the offense at all." [2] Neither party mentioned, during closing jury arguments, Randy's out-of-court statement to Steward rhetorically asking why did appellant have to hit the victim.

Appellant claimed on direct appeal that the trial court erroneously admitted this out-of-court statement. The Court of Appeals decided in an unpublished, memorandum opinion that this out-of-court statement was admissible under the co-conspirator exemption from the hearsay rule set out in TEX.R. EVID. 801(e)(2)(E) which defines as nonhearsay "a[n] [out-of-court] statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy." *See Byrd v. State*, No. 03–02–00625–CR slip op. at 7–8, 2004 WL 162939 (Tex.App.-Austin, January 29, 2004) (memorandum opinion not designated for publication). The Court of Appeals also decided that any error in admitting this out-of-court statement was harmless. *See id.* Its opinion states:

Our review of the record shows that Steward and [Randy] were part of a conspiracy to hinder appellant's apprehension by assisting in disposing of [the victim's] body and cleaning up the scene of the crime. [Citations omitted]. The conversation Steward discussed in her testimony was not "idle chatter," but rather a plan that neither would tell anyone about the crime and that [Randy] would protect Steward and appellant

2. The prosecution argued:

So, see, even if you go back into the jury room and you feel that the evidence shows [Randy] did it, if you believe [appellant] assisted in that offense at all, he is still guilty under the law of the parties. And when you get to the application paragraphs, and you get to the part where you have to decide whether he's guilty, on page 4, you'll see where it says, If you believe [appellant] either acting alone or with another party.

So it's either himself or acting with [Randy] and [Steward] as a party causing that death.

The State would submit to you it's a reasonable deduction from the evidence that [appellant] is, in fact, the one that [sic] picked up that dumbbell. But you can find him guilty as a party or as the primary person who picked up that weight.

if the subject ever came up. In the context of the conversation taken as a whole, the statement "why did [appellant] have to hit him" could reasonably be characterized as identifying appellant's role in the crime and therefore made in furtherance of the conspiracy. Therefore, we cannot conclude that the trial court abused its discretion in admitting the statement implicating appellant. Even if we were to find that [Randy's] statement was improperly admitted through Steward's testimony, [Randy] later testified at trial that the appellant hit [the victim] with a barbell. Therefore, Steward's testimony regarding [Randy's] statement, if admitted in error, was harmless. [Citation omitted].

*Id.*

Appellant sought discretionary review of this decision in a document he entitled "Brief of Petitioner." In this document, appellant raised two grounds for review, neither of which challenged the Court of Appeals' decision that any error in admitting Randy's out-of-court statement was harmless. This Court granted discretionary review on one ground which claimed that Randy's out-of-court statement was inadmissible under Rule 801(e)(2)(E) because this out-of-court statement was "a

statement about events that allegedly transpired before the beginning of the alleged conspiracy." The ground upon which we granted discretionary review states:

> This Court should grant review of the decision of the Court of Appeals holding the co-conspirator's "exception" to the hearsay rule applied to make admissible an out-of-court statement because the appellate court erroneously decided an important issue of state law regarding the relationship for purposes of the exception between a conspiracy to conceal a crime and the preceding crime when the court extended the exception to a statement about events that allegedly transpired before the beginning of the alleged conspiracy.

Appellant claims in his brief on discretionary review that Randy's out-of-court statement was inadmissible under Rule 801(e)(2)(E) because a statement about events that occurred before the conspiracy to conceal the crime is not "in furtherance" of this conspiracy.[3] Appellant also claims for the first time in his brief on discretionary review that admission of Randy's out-of-court statement harmed him under the harm analysis for non-constitutional error set out in TEX.R.APP. PROC. 44.2(b).[4]

---

3. Appellant argues in his brief on discretionary review "[t]he statement of a co-conspirator to a conspiracy to conceal a crime that was not itself part of the concealment conspiracy, which statement inculpates a participant in that crime, is not within the co-conspirator's rule. The statement cannot be made 'in furtherance' of the conspiracy because the crime itself was not part of the conspiracy." Appellant argues in his reply brief, "when a statement is made during the course of one conspiratorial offense but references only another offense, already completed, no relevant conspiracy exists pursuant to which the statement would be in furtherance, and, even though the statement is made pursuant to an irrelevant conspiracy, that statement is not admissible unless made 'in furtherance' of the conspiracy."

4. Appellant argues in his brief on discretionary review that admission of Randy's out-of-court statement affected his substantial rights under Rule 44.2(b). Appellant argues:

> Contradictory evidence regarding who committed the killing permeated the trial. Steward and Randy implicated [appellant], but Randy confessed orally to a police detective and to his manager. Thus, the hearsay testimony from Steward relating a statement of Randy that [appellant] committed the offense was highly prejudicial. A substantial likelihood exists that it was the a[sic] decisive determinant in the jury's decision to convict. It was the statement closest to the alleged incident and arose from the casual conversation of friends, appearing to lend it credibility. Accordingly,

■ Justice Blackmun's dissenting opinion in *Bourjaily v. United States* succinctly sets out the substantive contours of the co-conspirator exemption from the federal hearsay rule which, in relevant part, is identical to the co-conspirator exemption from our state hearsay rule. *See Bourjaily v. United States*, 483 U.S. 171, 188–94, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (Blackmun, J., dissenting) and various authorities cited therein.[5] The co-conspirator exemption from the hearsay rule is based on agency principles, "the underlying concept being that a conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all." *Id.*[6] This agency rationale is "not based primarily upon any particular guarantees of reliability or trustworthiness that [are] intended to ensure the truthfulness of the admitted statement." *Id.*[7] The "course and in furtherance of" requirements nevertheless provide some limited guarantees of trustworthiness under the rationale that active conspirators have "no incentive to misdescribe the actions of their fellow members." *Id.* Co-conspirator statements can be used against a defendant even though the defendant is not charged with a conspiracy offense. *See United States v. DeVillio*, 983 F.2d 1185, 1193 (2nd Cir.1993).[8]

■ A worthy beginning point for analyzing whether Randy's out-of-court statement was admissible under TRE 801(e)(2)(E) is the Supreme Court's decision in *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).[9] *Krulewitch* involved a Mann Act

---

introduction of the testimony adversely affected Byrd's substantial rights, making it reversible error.

**5.** USCS Federal Rules of Evidence, Rule 801(d)(2)(E), (Lexis Law Publishing 1998 Volume) (hereinafter referred to as FRE 801(d)(2)(E)), provides in relevant part:

A statement is not hearsay if [t]he statement is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

Texas Rule of Evidence 801(e)(2)(E) (hereinafter referred to as TRE 801(e)(2)(E)) provides:

A statement is not hearsay if [t]he statement *is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.*

**6.** *See Deeb v. State*, 815 S.W.2d 692, 697–98 (Tex.Cr.App.1991), *cert. denied*, 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992) (same); *see also United States v. DiDomenico*, 78 F.3d 294, 303–04 (7th Cir.), *cert. denied*, 519 U.S. 1006, 117 S.Ct.507, 136 L.Ed.2d 398 (1996) (criticizing this agency rationale).

**7.** This apparently is why the co-conspirator exemption from the hearsay rule is a "very narrow" one. *See Wong Sun v. United States*, 371 U.S. 471, 490, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**8.** *See also* Advisory Committee Notes to FRE 801(d)(2)(E) (Lexis Law Publishing 1998 Volume) at 183 (no guarantee of trustworthiness required in the case of an admission), and at 185 (*co-conspirator statements made after objectives of conspiracy have either failed or been achieved do not meet the "during the course and in furtherance of the conspiracy" requirements*); Commentary to FRE 801(d)(2)(E) (Lexis Law Publishing 1998 Volume) at 196 (co-conspirator statements made in course of and in furtherance of conspiracy are admitted "not because they are reliable, but because the adversary or his agents made them—if a party happens to make an unreliable statement, it is not up to the Judge to protect him from use of the statement by the adversary; it is up to the party to try to explain the statement or to diminish its importance"), and at 207 (same), and at 211 (rule does not require that a conspiracy be charged, only that one be shown to have existed).

**9.** Appellant relies on *Krulewitch* in support of his claim that Randy's out-of-court statement was not made "in furtherance" of a conspiracy to conceal the victim's murder. Appellant

prosecution charging a conspiracy to transport a prostitute from New York to Florida. *See Krulewitch,* 336 U.S. at 441–44, 69 S.Ct. 716. At trial, the State sought to introduce through the prostitute witness a co-conspirator's out-of-court statements to the prostitute implicating the defendant. *See id.* The co-conspirator made these out-of-court statements to the prostitute over a month after the prostitute had been transported to Florida. *See id.*

The State's theory of admissibility was that these out-of-court statements were part of the charged conspiracy to transport the prostitute from New York to Florida because they were made in an effort to conceal this charged conspiracy. *See id.* The Supreme Court disagreed and decided that the out-of-court statements made during an effort to conceal this conspiracy were inadmissible because the objectives of this conspiracy had been attained when the statements were made. *See id.;*[10] *see*

also *Lutwak v. United States,* 344 U.S. 604, 618, 73 S.Ct. 481, 97 L.Ed. 593 (1953) (teaching of *Krulewitch* is that declarations of a conspirator do not bind the co-conspirator if made after the conspiracy has ended);[11] *United States v. Howard,* 752 F.2d 220, 230 (6th Cir.), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985) (*Krulewitch* decided that declarations made after a conspiracy has terminated in an attempt to prevent detection are not statements made in furtherance of the main conspiracy).[12]

*Krulewitch* provides no support for appellant's claim that Randy's out-of-court statement is inadmissible under TRE 801(e)(2)(E) simply because it was "a statement about events [the victim's murder] that allegedly transpired before the beginning of the alleged conspiracy."[13] The State is not claiming here that a conspiracy to conceal the victim's murder was

also cites *DiDomenico* (cited in footnote 6) for this proposition. Relying on *Krulewitch, DiDomenico* stated that a "conspiracy, and a conspiracy to conceal an earlier, completed conspiracy, are two different conspiracies, like two different firms, and statements made in furtherance of the second, the cover-up conspiracy, are therefore not admissible in evidence to demonstrate participation in or the acts of the first conspiracy." *DiDomenico,* 78 F.3d at 303–04.

10. In a concurring opinion, Justice Jackson further described the circumstances under which the out-of-court statements were made, "[t]he conversation was said to have taken place after the substantive offense was accomplished, after the defendant, the co-conspirator and the witness had all been arrested, and after the witness and the other two had a falling out." *See Krulewitch,* 336 U.S. at 455, 69 S.Ct. 716 (Jackson, J., concurring).

11. Recognizing that federal constitutional restrictions "do not prevent the States from adopting a different rule which considers concealment of the underlying offense as a part of the conspiracy," some jurisdictions hold

that "the course of a conspiracy includes subsequent attempts at concealment of the crime where sufficiently proximate in time to the offense." *See, e.g., People v. Thomas,* 178 Ill.2d 215, 227 Ill.Dec. 410, 687 N.E.2d 892, 902 (1997), *cert. denied,* 524 U.S. 955, 118 S.Ct. 2375, 141 L.Ed.2d 742 (1998); *People v. Meagher,* 70 Ill.App.3d 597, 26 Ill.Dec. 800, 388 N.E.2d 801, 803 (1979).

12. Decided before the adoption of the federal Rules of Evidence, *Krulewitch* applied federal common law rules of evidence, which included a requirement that the co-conspirator's statement be made in furtherance of a charged conspiracy. *See United States v. Ellis,* 156 F.3d 493, 497 n. 4 (3rd Cir.1998). The current co-conspirator's exemption from the state and federal hearsay rules does not require that a conspiracy be charged. *See id.*

13. *See also People v. White,* 122 Ill.App.3d 24, 77 Ill.Dec. 498, 460 N.E.2d 802, 810–12 (1984) (uncharged conspiracy may exist as predicate for admissions and statements of co-conspirators when these admissions and statements are "factually intertwined" with the charged offense).

part of a charged conspiracy (to murder the victim).

The issue here, applying *Krulewitch*, is whether the objectives of the conspiracy to "hinder appellant's apprehension" had been attained when Randy made the out-of-court statement. The Supreme Court in *Grunewald v. United States* explained that a "vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *See Grunewald v. United States,* 353 U.S. 391, 405, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).[14] In *Grunewald,* 353 U.S. at 405–06, 77 S.Ct. 963 the Court stated:

> By no means does this mean that acts of concealment can never have significance in furthering a criminal conspiracy. But a vital distinction must be made between acts of concealment done in furtherance of the *main* [15] criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime. Thus the Government argues in its brief that "in the crime of kidnapping, the acts of conspirators in hiding while waiting for ransom would clearly be planned acts of concealment which would be in aid of the conspiracy to kidnap. So here, there

can be no doubt that * * * all acts of concealment, whether to hide the identity of the conspirators or the action theretofore taken, were unquestionably in furtherance of the initial conspiracy * * *." We do not think the analogy is valid. Kidnapers in hiding, waiting for ransom, commit acts of concealment in furtherance of the objectives of the conspiracy itself, just as repainting a stolen car would be in furtherance of a conspiracy to steal; in both cases the successful accomplishment of the crime necessitates concealment. (Footnote omitted). More closely analogous to our case would be conspiring kidnapers who cover their traces after the main conspiracy is finally ended—i.e., after they have abandoned the kidnaped person and then take care to escape detention. In the latter case, as here, the acts of covering up can by themselves indicate nothing more than that the conspirators do not wish to be apprehended—a concomitant, certainly, of every crime since Cain attempted to conceal the murder of Abel from the Lord.

In this case, the Court of Appeals decided that the conspiracy was much broader than just a conspiracy to conceal the victim's murder. *See Byrd,* slip op. at 7.[16] The Court of Appeals decided that there was a conspiracy "to hinder appellant's apprehension." *See id.*[17] This conspiracy

---

14. *See also Howard,* 752 F.2d at 229 (conspiracy is deemed to have ended when the last objective sought is achieved, when all conspirators have been arrested, or when achievement of the objective has otherwise been rendered impossible).

15. Emphasis in original.

16. Appellant claims that the conspiracy in this case was a conspiracy to conceal the victim's murder. *See* Footnote 3. A conspiracy to conceal the victim's murder would have

involved "disposing of [the victims'] body and cleaning up the crime scene." *See Byrd,* slip op. at 7. These objectives had been attained when Randy made the out-of-court statement asking why did appellant have to hit the victim. *See Krulewitch,* 336 U.S. at 441–44, 69 S.Ct. 716.

17. The State also argues in its brief:

> [Randy's] statement to Steward was made during the course of and in furtherance of a conspiracy that both [Randy and appellant] were a part of, and was therefore not hear-

was still ongoing at the time of the conversation between Randy and Steward very soon after the victim's murder. And, Randy's out-of-court statements to Steward about taking responsibility for the murder and protecting Steward advanced the objectives of this conspiracy.

We decide, however, that Randy's other out-of-court statement rhetorically asking why did appellant have to hit the victim did not advance the objective of the conspiracy "to hinder appellant's apprehension." *See Howard,* 752 F.2d at 230 ("[s]ome link must be established between the attempt to avoid detection and some

remaining objective of the conspiracy. The government must still prove both that a 'central aim of the conspiracy ... continued in being' and that the declarations directed at 'concealment ... were at least partly calculated to further this aim.' "); [18] *see also Guidry v. State,* 9 S.W.3d 133, 147–48 (Tex.Cr.App.1999), *cert. denied,* 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000) (co-conspirator's statement to third party merely described "what was occurring or what had occurred" and did not further conspiracy to murder victim for remuneration). This decision is consistent with the "very narrow" exemption from the hearsay rule set out in TRE

say. (Citation omitted). At the time [Randy] made the complained-of statement to Steward, he, Steward, and [appellant] were engaged in a conspiracy to obstruct justice and conceal [the victim's] murder. Specifically, [Randy] made the statement after he, Steward, and [appellant] drove [the victim's] SUV (with [the victim] inside) to south Dallas, burned the car and [the victim's] body, and then returned to [Randy's] apartment and attempted to clean up evidence of the murder. These acts amount to tampering with physical evidence and hindering prosecution, both criminal offenses. (Citations omitted). In addition, as noted by the trial court, [Randy's] statement was made before he or Steward spoke with the police about the murder.

In the same conversation during which [Randy] asked "why did [appellant] have to hit him," Steward testified that [Randy] told her they "couldn't tell nobody," and that "if anybody came to him to ask him about it or whatever, he was going to tell them that he was the one that did it." (Record reference omitted). Accordingly, the record reflects that the conspiracy to obstruct justice was ongoing at the time [Randy] made the complained-of statement to Steward.

In addition, [Randy's] statement to Steward served to identify [appellant's] role in the conspiracy to Steward, and was therefore made in furtherance of the conspiracy. (Citation omitted). The record reveals that Steward, although a co-conspirator, did not actually see [appellant] murder [the victim].

Accordingly, [Randy's] statement identified [appellant] as the murderer.

18. We note that this Court's decision in *Denney v. State* upheld the admissibility of evidence similar to that here. *See Denney v. State,* 558 S.W.2d 467, 468–70 (Tex.Cr.App. 1977), *cert. denied,* 437 U.S. 911, 98 S.Ct. 3104, 57 L.Ed.2d 1142 (1978). In *Denney,* the trial court admitted into evidence a co-conspirator's out-of-court statements to a third party stating that the co-conspirator and the defendant had killed an "old man" and that the third party should dispose of some of the evidence. *See Denney,* 558 S.W.2d at 468. This Court stated that, in addition to having to prove that these statements were made during the course of a conspiracy, the State also had to prove "that the statements made by the co-conspirator to a third party outside the presence of the accused were made in the furtherance of the conspiracy." *See Denney,* 558 S.W.2d at 469. This Court decided that the co-conspirator's out-of-court statements to the third party "were for the purpose of disposing of the fruits of the crime and disposing of evidence that the crime had been committed, all in furtherance of the conspiracy and, therefore, admissible." *See id.*

*Denney,* however, was decided before the adoption of the Rules of Evidence. In *Meador v. State,* this Court explained that cases decided before the adoption of the Rules of Evidence did not recognize the "in furtherance" requirement at all "or if recognized, its interpretation was unsettled." *See Meador v. State,* 812 S.W.2d 330, 333 (Tex.Cr.App.1991).

801(e)(2)(E) [19] and Justice Jackson's renowned concurring opinion in *Krulewitch* discussing how expanding indefinitely the vague crime of conspiracy can constitute "a serious threat to fairness in our administration of justice." *See Krulewitch*, 336 U.S. at 445–458, 69 S.Ct. 716 (Jackson, J., concurring).

We nevertheless agree with the Court of Appeals that the error in admitting Randy's out-of-court statement was harmless. Randy testified at trial consistently with this out-of-court statement, and he was subject to cross-examination. Randy's out-of-court statement rhetorically asked why did appellant have to hit the victim, and Randy testified at trial that he saw appellant strike the victim with the barbell. Randy's out-of-court statement, therefore, was not the only evidence presented at appellant's trial identifying appellant as the one who struck the victim with the barbell. It is also relevant that the State did not mention Randy's out-of-court statement during closing jury arguments. Therefore, the error in admitting Randy's out-of-court statement did not have "a substantial and injurious effect or influence in determining the jury's verdict." *See Ford v. State*, 73 S.W.3d 923, 925 (Tex.Cr.App.2002).

The judgment of the Court of Appeals is affirmed.

PRICE and JOHNSON, JJ., concurred.

WOMACK, J., not participating.

**19.** *See Wong Sun,* 371 U.S. at 490, 83 S.Ct. 407.