COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



PEDRO YERBA, §

Appellant, §

v. §

THE STATE OF TEXAS, §

Appellee. §

§

No. 08-12-00201-CR

Appeal from

120th District Court

of El Paso County, Texas

(TC # 20100D00017)

## O P I N I O N

Pedro Yebra appeals his conviction of aggravated assault of a family member (Count I), enhanced by a prior felony conviction. Appellant was charged by indictment with three counts of aggravated assault, but the State abandoned Counts II and III during trial. After finding Appellant guilty of Count I and finding he used or exhibited a deadly weapon during the commission of the offense, the jury found the enhancement paragraph true and assessed his punishment at a fine of $10,000 and confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of fifty-six years. Based on the jury's affirmative finding, the trial court entered a deadly weapon finding in the judgment. We affirm.

## FACTUAL SUMMARY

The trial below concerned three separate indictments alleging Appellant committed multiple assaultive offenses against his former wife, Norma Yerba. First, Appellant was charged

by indictment in cause number 20070D03113 with one count of assault causing family violence, enhanced by a prior felony conviction, alleged to have occurred on November 14, 2006. Second, in cause number 20070D05900, Appellant was charged in a multi-count indictment with aggravated assault (Count I) and assault involving family violence, enhanced with a prior felony conviction (Count II), alleged to have occurred on July 11, 2007. Third, Appellant was charged by indictment with three counts of aggravated assault alleged to have occurred on September 20, 2008. The jury found him not guilty of the charges alleged in cause numbers 20070D03113 and 20070D05900. The State abandoned Counts II and III of the indictment in cause number 20100D00017, but the jury found him guilty of Count I and further found that he used or exhibited a deadly weapon during the commission of the offense.

The evidence at trial showed that in 2008, Appellant lived with Norma Yebra and their son, Israel, in Fabens, Texas. On the evening of September 19, 2008, Norma went out to dinner in El Paso with her boyfriend, Victor, while Israel was out with his friends. Appellant was drinking alone at home. Israel knew Appellant had assaulted Norma previously so he called to warn her that Appellant had been drinking and told her not to come home because he did not want "any problem to happen." Norma returned home early the following morning, but Appellant was not home because he spent the night at his mother's house. Norma and Israel spent the night at their house. After calling to ask if he could come over to get some clothes, Appellant returned to his and Norma's home in Fabens at about 8 a.m. on September 20. Norma and Appellant started arguing almost immediately, as Appellant was demanding to know what Norma had been doing the night before and who she had been with. The two were yelling at each other in their bedroom, but Norma testified that she grew weary of arguing and proceeded into their bathroom to start getting ready for the day. .

Norma stood by the sink and Appellant followed her into the bathroom and sat down on the edge of the bathtub. They continued to argue about where Norma had been the night before, what time she got home, and other related issues when Norma felt what she thought were punches to her back. When Norma turned around, she saw that Appellant had a knife in his hand and he was actually stabbing her. Norma yelled at Appellant and the noise drew Israel to the restroom, where he grabbed his father, walked him out of the house, and locked the door behind him. Norma testified that when Israel came back into the bathroom, she told him that she could not breathe and asked him to call 911 and put pressure on her back. Several deputy sheriffs were dispatched to respond to the scene. Deputy Keith Taggart testified that information went out on the sheriff's radio that Appellant had fled the scene on a mountain bike, so he patrolled the area to look for Appellant. Deputy Julio Gonzalez also responded to the call and was told by one of the Yebras' neighbors that they had seen Appellant out walking around by a landfill. Deputy Gonzalez found Appellant at the landfill and arrested him. The evidence established that Appellant had stabbed Norma eleven times in the face, chest, arm, and back. She was admitted to a hospital and remained in the intensive care unit for two days. .

## ADMISSIBILITY OF EVIDENCE

In his first issue, Appellant challenges the trial court's exclusion of evidence proffered by one of his examining psychiatrists, Dr. Cynthia Rivera. Specifically, Appellant argues that the exclusion of Dr. Rivera's testimony effectively prevented him from presenting a meaningful defense--of insanity, in this case--to the assault charges brought against him.

Appellant suffered a head injury and subdural hematoma in 2006 which necessitated surgery in early 2007 to relieve the pressure on his brain. Subsequent psychiatric evaluations note that Appellant underwent some personality changes (depression, increased frustration) and

memory issues (dementia) after the surgery as well as a decline in his level of intelligence, but none of the evaluating psychiatrists suggested that he did not know the difference between right and wrong. Appellant was initially judged to be incompetent to stand trial due to his inability to understand the charges against him or the functions of a judge and jury. He was pronounced competent after treatment at the North Texas State Hospital.

In a hearing outside of the jury's presence, Dr. Rivera testified regarding her evaluation of Appellant in connection with his insanity plea. She found no medical evidence to suggest that he could not appreciate the difference between right and wrong. Dr. Rivera was aware Appellant had suffered an injury to the left frontal parietal lobe of his brain in late 2006 and in early 2007 he had a craniotomy to relieve pressure on his brain. One of the functions of the frontal lobe of the brain is executive functioning. Dr. Rivera explained that executive function is the ability of a person to piece together step by step as to what a person does. As an example of executive functioning, a person would pay a bill by writing a check, putting it in an envelope, putting an address on the front, putting a stamp on it, and dropping it in the mailbox. When asked by defense counsel whether executive functioning included recognizing actions as right or wrong, she stated that morality is in other parts of the brain, but a person could recognize right or wrong in the frontal part of the brain. In her opinion, it was unlikely that Appellant's brain injury and resulting personality changes caused him to be unable to tell right from wrong.

*Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Robbins v. State*, 88 S.W.3d 256, 259-60 (Tex.Crim.App. 2002); *Prystash v. State*, 3 S.W.3d 522, 527 (Tex.Crim.App. 1999). As long as a trial court's decision to admit evidence is within the zone of reasonable disagreement, no abuse of discretion occurs. *Weatherred v. State*, 15

S.W.3d 540, 542 (Tex.Crim.App. 2000); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991). We must uphold the trial court's decision "[i]f the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex.Crim.App. 2004).

*Exclusion of Expert Testimony on Mental Illness*

Texas does not recognize diminished capacity as an affirmative defense. *Jackson v. State*, 160 S.W.3d 568, 573 (Tex.Crim.App. 2005). There is a presumption that a criminal defendant intends the natural consequences of his acts. *Ruffin v. State*, 270 S.W.3d 586, 591 (Tex.Crim.App. 2008). As with other elements of an offense, relevant evidence may be presented which the jury may consider to negate the *mens rea* element. *Jackson*, 160 S.W.3d at 574. This may include evidence of a defendant's history of mental illness, physical or mental diseases, or defects. *Jackson*, 160 S.W.3d at 574; *Ruffin*, 270 S.W.3d, at 593. In addition to being relevant, the evidence must also be admissible under other applicable standards, including Rules 403 or 703-705 of the Texas Rules of Evidence. *See Ruffin*, 270 S.W.3d at 595-96; *Jackson*, 160 S.W.3d at 574. Even if the evidence is admissible under these standards, it may still be excluded if it does not truly negate the required *mens rea*. *Ruffin*, 270 S.W.3d at 596.

If an item of evidence has the ability to make the existence of a fact that is of consequence to the outcome of the case appear more or less probable, it is deemed to be relevant. TEX.R.EVID. 401. Irrelevant evidence is inadmissible, and all relevant evidence is admissible unless otherwise provided. TEX.R.EVID. 402. Specifically, relevant evidence can be excluded if its probative value is outweighed by a risk of creating prejudice, confusing the issues, misleading the jury, or unnecessarily delaying the trial proceedings. TEX.R.EVID. 403. Relevant evidence may also be excluded if it is nothing more than a cumulative summation of other evidence that

has already been presented and admitted. *Id*. Furthermore, if scientific evidence will assist the trier of fact in understanding the evidence or determining a fact in issue, an expert witness *may* testify in reference to that fact or evidence. TEX.R.EVID. 702. The key word here is "may"--a trial judge is not required to admit expert testimony regarding scientific evidence or any other sort of specialized knowledge. *Id*.

There is a balancing test that must be conducted by the trial judge when determining whether the probative value of the evidence in question outweighs the aforementioned risks and issues. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006). When carrying out the Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Id*. Trial courts are responsible for balancing these factors when considering whether or not to admit evidence, but there is a presumption that the judge conducted the test--if a record is silent as to whether the test was conducted, an appellate court is not to assume that the record's silence implies that the judge did not conduct the test. *Williams v. State*, 958 S.W.2d 186, 195-96 (Tex.Crim.App. 1997). Although the voluminous reporter's record detailing the proceedings at the trial level does not directly reflect that trial judge conducted the balancing test, we will assume that it was done. Trial judges are "gatekeepers" and have the responsibility to weed out evidence they deem inadmissible, and the proponent of the evidence--in this case, Appellant-- bears the burden of proving to the trial court by clear and convincing evidence that the proffered

-6-

evidence is sufficiently relevant to assist the jury. *Layton v. State*, 280 S.W.3d 235, 241 (Tex.Crim.App. 2009).

When making a decision on the admissibility of expert testimony regarding a defendant's mental illness, trial judges first determine whether or not the evidence rebuts the defendant's culpable *mens rea*. *Mays v. State*, 318 S.W.3d 368, 382 (Tex.Crim.App. 2010). If it does not, the trial judge is not required to admit the testimony. *Id.* If evidence from psychiatrists or other such expert witnesses does not rebut the presumption that a criminal defendant intended the natural consequences of his actions, the trial court cannot be said to have erred in excluding such evidence at the guilt-or-innocence phase of the trial. Thus, if Dr. Rivera's testimony did not rebut the presumption that Appellant intentionally caused bodily injury to Norma Yebra when he stabbed her repeatedly on September 20, 2008, the trial court acted within his discretion in excluding the testimony. Nothing in Dr. Rivera's proffered testimony suggests that Appellant did not intend to injure his wife, and thus the trial court did not abuse its discretion by excluding the evidence.

Even if Dr. Rivera's testimony had rebutted Appellant's culpable *mens rea*, the trial court could have concluded the proffered testimony is inadmissible under Rule 403. Dr. Rivera confirmed that Appellant had suffered a head injury and a subsequent decrease in his ability to tolerate frustration, but she noted that in general, other patients with the same injury do not lose the ability to discern right from wrong, and she found no medical evidence to suggest that Appellant could not make this distinction. Her testimony was evidence of nothing more than Appellant's mental weakness and emotional disturbance, and this sort of evidence is inadmissible at the guilt-innocence phase of trial. *See Cowles v. State*, 510 S.W.2d 608, 610 (Tex.Crim.App. 1974). To be legally considered insane, a defendant must not have had the

ability to know that his conduct was wrong at the time of the commission of the charged conduct. TEX.PENAL CODE ANN. § 8.01(a)(West 2011). Dr. Rivera explicitly testified that Appellant had no such inability; thus, her testimony lacks "probative force" with respect to Appellant's ability to raise an insanity defense. TEX.R.EVID. 401, 403. Even if we assume for the sake of argument that Dr. Rivera's testimony had furthered Appellant's ability to raise an insanity defense, her testimony was essentially a summation of Appellant's medical records that were already admitted into evidence and carried a significant risk of being given too much weight by the jury, as it is reasonable to expect that lay people could confuse and merge the concepts of legal insanity and mere mental illness or defect. TEX.R.EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42. There was a substantial risk that admitting Dr. Rivera's testimony would confuse the jury, who likely would have given it undue weight, and this risk outweighs any probative force that her testimony could have had.

Finally, even if we were to go so far as to assume that Dr. Rivera's testimony was indeed wrongfully excluded, this fact is not sufficient to warrant reversal of Appellant's conviction. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000)*, citing King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Unless exclusion of her testimony had a "substantial and injurious effect or influence" on the jury as they made their determination regarding Appellant's guilt, the conviction should not be reversed. *Id*. As mentioned before, Dr. Rivera's testimony was essentially a summary of Appellant's lengthy medical records and a slightly more straightforward description of the effects that Appellant's head injury and surgery had on his mental state. Appellant's medical records were admitted and were available to the jury when they undertook to determine whether or not Appellant was guilty of aggravated assault. Thus, it

stands to reason that exclusion of Dr. Rivera's testimony did not have any substantial or injurious effect on the jury's decision. For these reasons, we overrule Issue One.

## CHARGE ERROR

In Issue Two, Appellant contends that the trial court erred in not including an instruction on the insanity defense in its charge to the jury at the guilt phase of the trial. Appellant maintains that he properly raised the issue of insanity by competent evidence during the trial.

### *Standard of Review*

Appellate review of alleged jury charge error generally involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex.Crim.App. 2013); *Abdnor*, 871 S.W.2d at 732. When determining whether the charge is erroneous, we consider it "as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.App. 1995).

If there is error in the charge, we must then analyze whether sufficient harm resulted from the error to require reversal. *Wooten*, 400 S.W.3d at 606. Under this second step, the degree of harm necessary for reversal usually depends on whether the appellant properly preserved the error by objection. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003). If the appellant objected to the charge, as in this case, we determine whether there is "some harm." *Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex.Crim.App. 2009).

### *Denial of an Instruction on the Insanity Defense*

It is an affirmative defense to a charged crime that, at the time the alleged conduct was committed, the actor did not know that his conduct was wrong as a result of some mental illness

or defect. TEX.PENAL CODE ANN. § 8.01(a). An inability to distinguish right from wrong constitutes *legal* insanity, the standard that must be proven to uphold an insanity defense. *Love v. State*, 909 S.W.2d 930, 943 (Tex.App.--El Paso 1995, pet. ref'd), *citing Graham v.* State, 566 S.W.2d 941, 948 (Tex.Crim.App. 1978). Criminal defendants are constitutionally required to have the opportunity to present a meaningful defense, but the defense must only be submitted to the jury if it is supported by relevant evidence during the trial. *Miller v. State*, 36 S.W.3d 503, 506-07 (Tex.Crim.App. 2001). An instruction on an affirmative defense will not be submitted to the jury unless there is evidence admitted supporting the defense. TEX.PENAL CODE ANN. § 2.04(c).

The issue at the heart of this point of error is whether Appellant sufficiently raised the issue of his insanity and, thus, was entitled to a jury instruction. In order to raise an affirmative defense, the burden of proof is very low--any evidence that is brought before the trial court and admitted that raises "a defensive theory to the charged offense" requires a jury charge on said theory. *Brown v. State*, 955 S.W.2d 276, 279 (Tex.Crim.App. 1997). The defendant is entitled to an instruction on the defense raised by the evidence "whether that evidence is weak or strong . . . and regardless of what the trial court may or may not think about the credibility of the defense." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996). Though a wide range of admissible evidence will satisfy the defendant's burden of proof in this case, the evidence must *support* the defensive theory that the defendant wishes to advance. In order for a defendant to sufficiently raise the issue of his insanity at trial, he must demonstrate via some admitted evidence that he could not discern right from wrong at the time of the alleged offense. *Love*, 909 S.W.2d at 943; *Brown*, 955 S.W.2d at 279.

Nothing in the record reflects that Appellant did not know right from wrong when he stabbed his wife in September of 2008. Mere evidence of mental illness or emotional problems is not sufficient to raise a defensive theory of insanity. *Compare Reyna v. State*, 116 S.W.3d 362, 367-68 (Tex.App.--El Paso 2003, no pet.) *with Coble v. State*, 871 S.W.2d 192, 202 (Tex.Crim.App. 1993), *Cato v. State*, 534 S.W.2d 135, 138 (Tex.Crim.App. 1976), *Cowles v. State*, 510 S.W.2d 608, 609 (Tex.Crim.App. 1974), *and Garcia v. State*, 429 S.W.2d 468, 471 (Tex.Crim.App. 1968)(demonstrating when evidence is sufficient to demonstrate legal insanity and when it is not). Furthermore, even if a certain mental deficiency is medically recognized as a form of insanity and a defendant demonstrates via competent evidence that he possessed such a deficiency at the time of the alleged criminal conduct, that evidence is not sufficient to entitle the defendant to an insanity instruction. *Fuller v. State*, 423 S.W.2d 924, 925 (Tex.Crim.App. 1968). Appellant's medical records demonstrate that he developed emotional problems after his head injury and surgery and also reflect that Appellant's examining psychiatrists diagnosed him with depression. The medical records do not, however, prove--or even suggest--that Appellant was not able to distinguish right from wrong at the time of the assault. In fact, Deputy Taggart's testimony noting that Appellant fled the scene of the assault and Deputy Gonzalez' testimony noting that Appellant initially tried to run when cornered by law enforcement serve as firm evidence of Appellant's having the ability to tell right from wrong at the time of the assault--if he did not know stabbing his wife was wrong, he would not have fled the scene and tried to run from law enforcement. Because none of the admitted evidence supports a theory that Appellant was legally insane when he attacked his wife, he was not entitled to a jury instruction on the affirmative defense of insanity. The trial court did not err in refusing to instruct the jury on

-11-

insanity as Appellant requested. Issue Two is overruled. Having overruled both issues presented

on appeal, we affirm the judgment of the trial court.


September 30, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)