# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00132-CR

---

**Kenneth Wayne Acy, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 51ST DISTRICT COURT OF TOM GREEN COUNTY
### NO. A-14-1120-SA, THE HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury found appellant Kenneth Wayne Acy, Jr. guilty of two counts of aggravated assault with a deadly weapon, *see* Tex. Penal Code § 22.02(a)(2), and one count of unlawful possession of a firearm by a felon, *see id.* § 46.04(a). In three points of error, appellant complains about the exclusion of evidence. For the following reasons, we affirm the judgments of conviction.[1]

### BACKGROUND

The evidence at trial established that on September 23, 2014, appellant fired multiple shots with a firearm at two individuals and that he previously had been convicted of a

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, .4. The facts recited are taken from the testimony and other evidence presented at trial.

felony. The State's witnesses during the trial's guilt and innocence phase included responding officers and the two individuals. The incident occurred on a large piece of land. The two individuals testified that appellant pointed and fired a firearm at them, that appellant said something about "dead bodies in the ground" and "buried out here," and that they moved behind a truck and then were able to run away and call 911. After the police arrived, officers searched the land for several hours before locating appellant lying in the middle of some cactus about "fifty yards away" from where the truck was located. Appellant had the firearm with him. Because appellant was not wearing shoes, the officers carried him and placed him in the back of a patrol car. Shortly after that, appellant told the officers that "he was having a heart attack and that his body hurt all over."[2] It was very hot, and one of the officers described appellant as "very incoherent, lethargic, kind of droopy eyed," and not "processing words." Based on the officer's "intensive narcotics-related experience" and observations of appellant at the scene, the officer testified that appellant appeared to be "under the influence of some controlled substance."

After the State rested, and at the urging of the defense, the trial court conducted a hearing outside the presence of the jury to evaluate whether the defense would be able to present evidence of insanity. The defense witnesses during the hearing were appellant's mother and the court-appointed psychologist who had examined appellant to assess his sanity at the time of the alleged offense.[3] Appellant's mother testified that appellant suffered from mental illness and that she had been around him when his behavior was "bizarre" and not making sense and that he had attempted suicide several times. She, however, testified that the last time she saw him

---

[2] Before he was taken to jail, appellant was taken to the hospital.

[3] The psychologist also examined appellant's competency to stand trial and opined that he was competent to do so.

2

before the incident was "[t]he day before" at her house and that at that time, he seemed fine, "was looking very nice," and borrowed her car.

The psychologist testified about background information that was provided to him, including statements from firemen that described appellant several hours before the incident as being barefoot and shirtless and "asking for a knife to cut some tattoos from his face or from his neck." As part of the evaluation, the psychologist also spoke with appellant and appellant's mother. Based on the information that he had obtained, the psychologist testified that appellant had a history of using illegal drugs including methamphetamine[4]; had schizoaffective disorder with polysubstance abuse or polysubstance dependence[5]; and had been hospitalized for mental illness in the past, but that prior to the incident, he had been able to tell that his hallucinations were not real. The psychologist testified that appellant stated that on the day of the incident, he injected a substance that he believed to be methamphetamine into one of his veins and that once the substance was injected, "[t]he seams of reality disappeared."

The psychologist further testified:

> I'm not sure what the delusions and hallucinations prior to this injection of meth were. We just talked about there were delusions and hallucinations present, but he understood they were delusions and hallucinations. At the time of the -- the -- when he put the -- what he thought was meth into his vein, it didn't act like meth. His delusions were quite vivid. He saw the devil. He saw walls of fire. He had delusional ideas that his family was buried in the ground and they were breathing through a little tube and he had to save their lives. He could hear them screaming. His daughter and his mother were below ground screaming. He thought they were buried somewhere.

---

[4] In his written assessment to the trial court, the psychologist reported that appellant "stated that he preferred the injectable version of methamphetamine."

[5] The psychologist explained, "Polysubstance means there are lots of substances that he had used."

Just a conglomeration of bizarre kind of notions and ideas and auditory and visual experiences that were different than any he had had, by his description, were different than any he had had before he injected this, whatever it was, into his veins.[6]

The psychologist also answered that, "I think that's right," when asked if appellant was insane primarily or only because of the intoxication. The psychologist further testified that appellant told the psychologist that he did not remember shooting at anyone.[7] Based on his evaluation, the psychologist's opinion was that appellant "was unable to recognize the wrongness of his behavior" and was insane at the time of the alleged offense because of intoxication.

The State argued that the proffered testimony was not admissible because if appellant was insane at the time of the incident, the evidence only supported that it was due to voluntary intoxication, which is not a legal defense to a crime, and that appellant lacked memory of the incident. The trial court did not allow appellant's proffered testimony during guilt and innocence. The only defense witness then was one of the firemen who testified about his contact with appellant several hours before the incident. The fireman testified that appellant was

---

[6] In his written assessment to the trial court, the psychologist similarly reported that appellant "stated that the effect of the substance was different from any methamphetamine he used in the past."

[7] In his written assessment to the trial court, the psychologist reported:

[Appellant] described injecting a substance into one of his veins shortly before the alleged incident. He claimed that the substance brought on bizarre perceptions and ideas that interfered with his ability to recognize reality from hallucinations. Witnesses reported that he appeared disoriented, that he ranted about dead people buried in the area and that he asked for a knife to cut away his tattoos. [Appellant] claimed amnesia for the moment when shots allegedly rang out, but he described mental experiences leading up to that moment that kept him from knowing his alleged actions were wrong.

4

shirtless with no shoes and asked for a knife "to cut off [his] tattoo." Based on his experience, the fireman testified that appellant "may have been under the influence of something."

The trial court did not instruct the jury about the affirmative defense of insanity but instructed the jury that "[v]oluntary intoxication does not constitute a defense to the commission of a crime" and that "'[i]ntoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." The jury found appellant guilty of the two aggravated-assault counts and the felon-in-possession count. The question of punishment was tried before the trial court. During the punishment phase of trial, the trial court took judicial notice of the psychologist's testimony from the hearing outside the presence of the jury and heard other testimony, including from appellant's mother. The trial court found the enhancement paragraphs for the aggravated-assault counts true and sentenced appellant to forty years' confinement for those counts and ten years' confinement for the felon-in-possession count. This appeal followed.[8]

## ANALYSIS

Appellant's three points of error complain about the trial court's exclusion of the testimony from the psychologist and appellant's mother during the trial's guilt and innocence phase.

---

[8] Appellant's initial notice of appeal was not timely. It was due on September 29, 2015, but not filed until October 27, 2015. *See Acy v. State*, No. 03-15-00677-CR, 2015 WL 7166464, at *1 (Tex. App.—Austin Nov. 13, 2015, no pet.) (mem. op., not designated for publication). The Texas Court of Criminal Appeals granted him the right to file an out-of-time appeal in January 2020. *See Ex parte Acy*, No. WR-90,759-01, 2020 WL 469656, at *1 (Tex. Crim. App. Jan. 29. 2020) (per curiam).

5

**Standard of Review**

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles.'" *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We may not reverse the trial court's decision unless it "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). "An evidentiary ruling will be upheld if it was correct on any theory of law applicable to the case." *Henley*, 493 S.W.3d at 93 (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

**Psychologist's Testimony**

In his first point of error, appellant argues that the trial court abused its discretion when it would not allow the defense to call the psychologist as a witness to testify on his insanity defense, "thereby denying his opportunity to obtain a jury charge on his only defensive issue."

Before a defendant has the right to present evidence of a defense, the evidence must be relevant and not excluded by an established evidentiary rule. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). "Relevant evidence" is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

6

probable or less probable than it would be without the evidence. *See* Tex. R. Evid. 401; *see also Gonzalez*, 544 S.W.3d at 370 (explaining that evidence is relevant if it "provides a small nudge toward proving or disproving a fact of consequence"). Evidence must be both material and probative to be relevant. *Miller*, 36 S.W.3d at 507. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. *Id.*

"Texas law, like that of all American jurisdictions, presumes that a criminal defendant is sane and that he intends the natural consequences of his acts." *Ruffin v. State*, 270 S.W.3d 586, 591 (Tex. Crim. App. 2008). But "[i]t is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." Tex. Penal Code § 8.01(a). When a case is tried to a jury and the issue of the defendant's sanity "is supported by competent evidence," it should be submitted to the jury. Tex. Code Crim. Proc. art. 46C.151; *see Kuhn v. State*, 393 S.W.3d 519, 532 (Tex. App.—Austin 2013, pet. ref'd) (explaining that "[t]he issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense" (quoting Tex. Penal Code § 2.03(c))); *see also Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) (explaining that defendant bears "burden of showing that each element of the defense has been satisfied"); *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007) (explaining that for section 2.03(c) purposes, "defense is supported (or 'raised') if there is evidence in the record making a prima facie case for the defense" and that defendant "'bears the burden of production' with respect to a defense").

As support for his position that the trial court should have allowed the psychologist to be called as a witness during the trial's guilt and innocence phase to testify about appellant's sanity, appellant focuses on the State's stipulation that the psychologist was qualified

as an expert, *see* Tex. R. Evid. 702 (addressing testimony by expert witnesses); relies on the status of the psychologist as court-appointed to assess appellant's sanity at the time of the alleged offenses; and relies on the principle that it is not the court's function to determine the credibility or weight to be given to evidence raising a defensive issue, *see Shaw*, 243 S.W.3d at 657–58 (explaining that defendant is entitled to instruction on defense if defense is supported by evidence "even if the trial court is of the opinion that the evidence is not credible").  Appellant argues that the psychologist's testimony was reliable and relevant; that the testimony from the fireman, police officers at the scene, and the two individuals "provided some evidence raising the question of [appellant's] state of mind at the time of the offense"; and that "[w]hen and whether [he] took an intoxica[n]t prior to this incident is a factor to be considered," but it "goes to the weight of the evidence and not to its admissibility."

Insanity caused by voluntary intoxication, however, does not constitute a defense to the commission of a crime.  Tex. Penal Code § 8.04(a)[9]; *see Evilsizer v. State*, 487 S.W.3d 113, 116 (Tex. Crim. App. 1972) (holding that "if the pre-existing condition of mind of the accused is not such as would render him legally insane in and of itself, then the recent use of intoxicants causing stimulation or aggravation of the pre-existing condition to the point of insanity cannot be relied upon as a defense to the commission of the crime itself").[10]  Although the psychologist concluded that appellant was insane at the time of the alleged offenses, he also concluded that

---

[9] Evidence of temporary insanity caused by intoxication may be introduced during the punishment phase of trial, as it was in this case, as mitigation evidence.  *See* Tex. Penal Code § 8.04(b).

[10] *See also Cooper v. State*, No. 03-19-00007-CR, 2020 Tex. App. LEXIS 7773, at *4–5 (Tex. App.—Austin Sept. 23, 2020, pet. ref'd) (mem. op., not designated for publication) (discussing insanity caused by voluntary intoxication and quoting *Evilsizer v. State*, 487 S.W.3d 113, 116 (Tex. Crim. App. 1972)).

appellant's insanity at that time was due to intoxication. According to the psychologist's testimony during the hearing outside the presence of the jury, appellant stated that on the day of the incident, he injected a substance that he believed to be methamphetamine into one of his veins and that after the injection, "[t]he seams of reality disappeared." Based on this testimony, the trial court reasonably could have determined that the psychologist's testimony would not have helped the jury determine a fact of consequence because the only evidence was that appellant's intoxication at the time of the incident was voluntary and evidence of insanity caused by his voluntary intoxication did not constitute a defense to the commission of the alleged crimes.[11] *See* Tex. Penal Code § 8.04(a); *see also* Tex. R. Evid. 401; *Miller*, 36 S.W.3d at 507 (explaining that evidence must be both material and probative to be relevant). We overrule appellant's first point of error.[12]

---

[11] In his written assessment to the trial court, the psychologist stated that "[t]he scope of the examination did not include an investigation to determine whether the circumstances leading to [appellant's] intoxicated state constituted voluntary intoxication" and raised the possibility that someone forced appellant to inject the substance into one of his veins or added a powerful hallucinogenic to the substance. Appellant, however, did not produce evidence that would have supported either possibility. The only evidence was that he voluntarily injected the substance into one of his veins.

[12] Relying on the psychologist's testimony that appellant said that he did not remember shooting at anyone during the incident, the State argues that the trial court did not abuse its discretion in excluding the psychologist's testimony during the trial's guilt and innocence phase because a defendant who does not remember an offense does not present evidence to raise an insanity defense. *See Mendenhall v. State*, 77 S.W.3d 815, 818 (Tex. Crim. App. 2002); *Cato v. State*, 534 S.W.2d 135, 138 (Tex. Crim. App. 1976). Because we have already concluded that the trial court did not abuse its discretion, we need not address this additional argument. *See Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016) (explaining that evidentiary ruling will be upheld if it was correct on any theory of law applicable to case).

**Mother's Testimony**

In his second point of error, appellant argues that the trial court abused its discretion when it refused to allow his mother to testify during the trial's guilt and innocence phase on the issue of his mental health. During the hearing outside the presence of the jury, appellant's mother testified that appellant suffered from mental illness and that she had been around him when his behavior was "bizarre" and not making sense and that he had attempted suicide several times. Although appellant acknowledges that this testimony "alone" did not raise the insanity defense, he argues that the testimony should have been allowed because "observations by lay persons alone can be enough competent evidence to warrant the issue being decided by the jury."

The trial court, however, reasonably could have determined that his mother's testimony about appellant's mental health was not relevant, probative evidence on the issue of sanity at the time of the alleged offenses because she testified that he seemed fine "[t]he day before"—the last time she saw him before the incident. *See* Tex. R. Evid. 401; *Miller*, 36 S.W.3d at 507. We overrule appellant's second point of error.

**Due Process**

Appellant's third point of error also complains about the trial court's exclusion of the psychologist's testimony during the trial's guilt and innocence phase. He argues that the exclusion of this testimony denied him his ability to defend against the charges and rose to the level of a federal and state due process violation because the excluded evidence was a vital portion of his case and the exclusion effectively precluded him from presenting a defense.

10

The United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). However, "evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Williams v. State*, 273 S.W.3d 200, 232 (Tex. Crim. App. 2008) (quoting *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002)); *accord Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002). And, when evidence comes in an objectionable form, neither the Texas nor the United States Constitutions require its admission. *See Davis v. State*, 313 S.W.3d 317, 329 n.26 (Tex. Crim. App. 2010) (observing that constitutional right to "meaningful opportunity to present a complete defense" is "qualified by requirement that the evidence be relevant and not excluded by an established evidentiary rule"); *see also Crane*, 476 U.S. at 690 (explaining that "we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted").

We have concluded that the trial court did not abuse its discretion by excluding the psychologist's testimony during the trial's guilt and innocence phase under the applicable evidentiary rules and, thus, conclude that appellant has not shown that the trial court violated his due process rights.[13] *See Davis*, 313 S.W.3d at 329 n.26; *Wiley*, 74 S.W.3d at 408 (observing that "appellant has failed to show how the trial judge's ruling was erroneous, much less so

---

[13] As support for his contention that his due process rights were violated, appellant cites *Lighteard v. State*, 982 S.W.2d 532 (Tex. App.—San Antonio 1998, pet. ref'd). We do not find that case helpful. In that case, our sister court observed that when a defendant shows that sanity will be an issue at trial, due process requires the trial court to appoint an expert to assist the defendant and concluded that the defendant's due process rights were violated because he was effectively denied access to an expert. *Id.* at 533, 535. In contrast, here, the trial court appointed a psychologist to examine appellant to assess his sanity at the time of the alleged offenses.

clearly erroneous that it violated his constitutional rights"); *see also Crane*, 476 U.S. at 690.  We overrule appellant's third point of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the judgments of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Kelly

Affirmed

Filed:   February 11, 2022

Do Not Publish