

# NUMBER 13-22-00466-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RENE GUILLERMO GARCIA
A/K/A RENE GARCIA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

### On appeal from the 399th District Court
### of Bexar County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

Appellant Rene Guillermo Garcia a/k/a Rene Garcia appeals his conviction for

aggravated robbery, a first-degree felony. *See* TEX. PENAL CODE ANN. § 29.03. The trial

court sentenced Garcia to life imprisonment. *See id.* § 12.34(a). By one issue, Garcia

argues that the trial court abused its discretion by admitting Facebook messages from a

co-conspirator into evidence. We affirm.

## I.   BACKGROUND[1]

On July 9, 2020, a grand jury indicted Garcia for aggravated robbery. Trial commenced on August 23, 2022. Joshua Esparza testified to events that occurred on the evening of January 16, 2020. According to Esparza, he knew Hannah Neira through "mutual friends," but the two only communicated via Facebook and Snapchat prior to the day of the incident. "[A] couple days before" the incident, he earned a cash bonus from the barbershop where he worked. On the day of the incident, Esparza showed off his bonus, perhaps "a little bit too much," on his social media accounts.

That evening, Esparza and "Joseph," a colleague, wanted to get a drink at Perfect Score, a sports bar, and he decided to invite Neira. Prior to this evening, Esparza had asked Neira "to go out" multiple times, but she had never said yes. However, on this occasion, Neira accepted his invitation.

According to Esparza, he initially picked up Neira on the southwest side of town, but Neira told him that "she had to go drop off clothes" for her child "[o]n the east side" of town at the Edge Apartments. Esparza then drove with both Neira and Joseph in the car to the apartment complex, and Neira left "for about 15 minutes and then came back to the car." Then Esparza, Neira, and Joseph drove to Perfect Score.

Upon arrival, Esparza and Joseph entered the establishment, but Neira "stayed in the car for about 20 minutes." Esparza testified that once Neira joined them, "she kept

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

2

running off to her phone [and] going in the restroom." After about an hour, "out of nowhere," Neira stated, "We got to go, my baby's crying." The three then left.

Esparza first dropped off Joseph. He and Neira stopped to get food at Whataburger, and then the two returned to the Edge Apartments. Esparza testified to the following chain of events:

> When I pulled up, I stopped there and when I stopped, I was like, "Are you going to get out? You're like rushing me to get here." She didn't want to get out.
>
> So then my nerves is [sic] like jumping already, like I guess I felt—I felt something. So then I tried to drive and I drove straight and I drove straight back to the back, and right there I tell her again, like, "Get out. What are you doing? Get out of my car. You told me to come."
>
> . . . .
>
> I was telling her get out and she was on the phone and she just kept telling somebody, "Hurry up." Right when I heard that, that's when I was trying to like get her out, like get out of the car. I kept yelling at her.
>
> . . . .
>
> So then I'm at the exit gate and I see the chain was locked, like they chained the gate on me or it was chained. And then I drive a little forward to see if it would open. It didn't so at that time I rolled my window down.

Then, Esparza "got shot in the head." Esparza "saw someone in a hoodie," but could not provide any further description of the shooter. He then drove his car through the chained gate, made it to a nearby convenience store, and "just got out of the car and . . . fell." Esparza was eventually transported to the hospital. Esparza testified that he later realized his "backpack, a laptop, [his] phone, and" some money was stolen from his car that evening.

Garcia made a recorded statement to law enforcement, which was admitted into evidence. In the statement, Garcia told law enforcement that Neira set Esparza up to be robbed and that "me personally, I was gonna rob him."[2] According to Garcia, Neira first came to his apartment while she was accompanying two men and encouraged him and his friend, Jesus Villegas, to rob Esparza. Neira then went out for drinks and to get something to eat with Esparza. But, according to Garcia, Neira was communicating with him and Villegas throughout the evening. Neira then called Garcia to let him know they were at Garcia's apartment complex. Garcia stated that he and Villegas then "roll[ed] up on [Esparza], and um, [indecipherable] did what we did, know what I'm saying?" Garcia admitted to opening Esparza's car door "because [Neira] said the bread was in the car," but denied shooting Esparza.

During a hearing outside of the presence of the jury, the court heard argument on the admissibility of Facebook messages between Neira and Esparza and statements made by Neira in general. Counsel for Garcia objected to the Facebook messages on the grounds that they were more prejudicial than probative and that there were "a lot of statements in there that wouldn't qualify as statements for a conspiracy." The court did not rule on this objection. The State then discussed other statements made by Neira that it planned on introducing, and the court ruled that it would "go ahead and allow" the admission of Neira's statements.

During Esparza's testimony, the State offered into evidence State's Exhibit 22, which contained the Facebook messages between Neira and Esparza. Counsel for

---

[2] We have transcribed portions of the interview to the extent necessary to resolve the issue before us.

Garcia objected, stating, "I'll object, Your Honor, to its admission, confrontation clause, Sixth Amendment, because it's hearsay and because it lacks adequate foundation that the parties are who they say they are, what number the text came from, and who was typing." The trial court overruled these objections and the following Facebook messages were admitted:[3]

| Neira: | Wyd |
|---|---|
| Esparza: | Wya |
| Neira: | My house wby |
| Esparza: | Wanna chill |
| Neira: | What u trynna do |
| Esparza: | I'm going to perfect |
| Neira: | U want me to go w u? |
| Esparza: | If u want |
| Neira: | Bet can u take me to pick up my makeup from my hgs[4] plzzzzz so I can get ready |
| Esparza: | Wya<br>N where she at |
| Neira: | South and my hgs in the east |
| Esparza: | how long will it take unto get dressed |

---

[3] Portions of the messages also show that Neira and Esparza exchanged four phone calls while messaging. There were also three photos of Neira and Esparza included as part of this exhibit. We omit these components of the messages. Additionally, although there are many spelling and grammatical errors throughout, we leave those mistakes unaltered for the sake of fidelity.

[4] Esparza testified that Neira was referring to her "home girl's" house.

Neira: I just gotta put my makeup on I can do it in like 30 mins or idk it's up to I
U*

Esparza: What is it

Neira: 3022 Reforma dr
I have my baby w me but ima drop her off over there is that cool

Esparza: It's up to u

Neira: I'm just letting you know ima drop her off over there

Esparza: Ok we'll see

Neira: Lmk

Esparza: I'm otw
Be ready

Neira: Okay

Esparza: Almost ther

Neira: Pick
Ok

Esparza: Come out

Neira: Okaay

Esparza: Wya
Your so beautiful

Neira: Thank you [two heart emojis] u got lotion love I forgot to bring mine [crying emoji]

Esparza: No Bbe
I mean can I call u tht

Neira: Okaay & mmmm I guesss

6

The jury found Garcia guilty of aggravated robbery. The trial court sentenced Garcia as described above, and this appeal followed.

## II.  FACEBOOK MESSAGES

By his sole issue, Garcia argues the trial court erred by admitting Neira's Facebook messages because her messages contained hearsay and were uncorroborated.[5]

## A.  Applicable Law & Standard of Review

"Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." *Zuliana v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing TEX. R. EVID. 801(d)). But an out-of-court statement is not considered hearsay if it is offered against a party and "was made by the party's coconspirator during and in furtherance of the conspiracy." TEX. R. EVID. 801(e)(2)(E). The exclusion of co-conspirator statements from the rule against hearsay is "very narrow." *Byrd v. State*, 187 S.W.3d 436, 440 (Tex. Crim. App. 2005) (citing *Wong Sun v. United States*, 371 U.S. 471, 490 (1963)). The defendant need not be charged with a conspiracy offense, *id.*, but "the State must show that a conspiracy existed in which the co-conspirator was a member of or later participated in the conspiracy, and that the statements made were the object and purpose of the conspiracy." *Guidry v. State*, 9 S.W.3d 133, 148 (Tex. Crim. App. 1999).

"A statement made 'in furtherance' of a conspiracy is made in an effort to 'advance the cause of the conspiracy' or 'serve . . . to facilitate the conspiracy.'" *Id.* at 148 (quoting *Deeb v. State*, 815 S.W.2d 692, 697 (Tex. Crim. App. 1991)) (alteration in original).

---

[5] Garcia does not complain about the admission of Esparza's messages.

7

> Statements made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate or assist co-conspirators; (2) with intent to induce another to join the conspiracy; (3) in formulating future strategies of concealment to benefit the conspiracy; (4) with intent to induce continued involvement in the conspiracy; or (5) for the purpose of identifying the role of one conspirator to another.

*Guevara v. State*, 297 S.W.3d 350, 363 (Tex. App.—San Antonio 2009, pet. ref'd).

> In determining whether a trial court erred in admitting or excluding hearsay evidence under such an exception to the hearsay rule, a reviewing court looks to see whether the trial court abused its discretion; before the reviewing court may reverse the trial court's decision, it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.

*Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). If we determine a trial court abused its discretion in admitting or excluding hearsay evidence, we must next determine whether any harm resulted from the error. *Id.* at 592; *see* TEX. R. APP. P. 44.2(b) (explaining that non-constitutional error "that does not affect substantial rights must be disregarded").

## B. Analysis

We begin by addressing an ancillary matter. First, it is not entirely clear from Garcia's briefing to which set of Facebook messages he is referring. State's Exhibit 22 consisted of messages between Esparza and Neira and was admitted into evidence at trial. Garcia represents that another set of messages between Neira, Villegas, and Garcia exists; but this set of messages was not admitted into evidence nor was it made part of the appellate record. However, Garcia almost exclusively refers to this latter set of messages.

8

For instance, Garcia states, "At trial the State used Exhibit 39-C . . . , which is a custodial statement made by . . . Neira for corroboration as [sic] Appellant being charged as a co-conspirator." And he states, "Neira's Facebook post, as offered, stated[,] '[W]e . . . you guys need to rob this guy because he got money on him.'" But while Exhibit 39-C was discussed at the hearing outside the presence of the jury, it was not admitted into evidence and is not a part of the appellate record. Therefore, to the extent that Garcia complains the trial court erred by admitting Exhibit 39-C, we must overrule this complaint, as the record reflects that the trial court did not admit Exhibit 39-C. *See* TEX. R. APP. P. 44.2 (defining reversible error). We focus our analysis of this issue on whether the trial court abused its discretion by admitting State's Exhibit 22.

Next, we note that Garcia dedicates a significant portion of this issue to arguing that the accomplice-witness testimony rule applies, and that Neira's messages therefore had to be corroborated to result in a valid conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. However, the accomplice-witness testimony rule applies to the in-court testimony of an accomplice, not to out-of-court statements made by an accomplice who does not testify. *Bingham v. State*, 913 S.W.2d 208, 213 (Tex. Crim. App. 1995) (op. on reh'g) ("[W]e read Article 38.14 to embrace only the in-court 'testimony' of an accomplice."); *see also Carr v. State* No. 04-10-00018-CR, 2010 WL 4488613, at *3 (Tex. App.—San Antonio Nov. 10, 2010, pet. ref'd) (mem. op., not designated for publication) ("[O]nly in-court accomplice testimony is subject to the article 38.14 requirement of corroboration."). As Garcia recognizes, Neira "did not testify" at trial. Therefore, article 38.14 is inapplicable. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Bingham*, 913 S.W.2d

9

at 213.

Additionally, Garcia contends that the co-conspirator exclusion to the rule against hearsay did not apply because the evidence was insufficient to demonstrate that he was an acting member of a conspiracy or that the statements were made in furtherance of the conspiracy. "The existence of a disputed conspiracy must be proved by a preponderance of the evidence." *Wilkerson v. State*, 933 S.W.2d 276, 279 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). The evidence produced at trial indicates that there was a conspiracy to rob Esparza. In Garcia's recorded statement, he told law enforcement officers that Neira "set up" Esparza and that Garcia "personally" planned to rob him. This is sufficient to prove that a conspiracy existed, and that Garcia was a member of the conspiracy. *See id.* at 280 (concluding that evidence that appellant and another individual "were acting together" to sell drugs "is by itself sufficient to establish a conspiracy").

The direct and circumstantial evidence reflects that the conspirators likely believed Neira's participation would entice Esparza, and that through Neira's participation, the co-conspirators could track and direct Esparza's movements. Indeed, it seems unlikely that the co-conspirators would have been able to execute the robbery in the manner they did had it not been for Neira's communications with Esparza. *See Guidry*, 9 S.W.3d at 148. The messages from Neira to Esparza were intended to induce Esparza to deal with Neira and were therefore in furtherance of the conspiracy. *See Guevara*, 297 S.W.3d at 363. We conclude that Neira's Facebook messages fell within the co-conspirator exclusion to the rule against hearsay.

10

However, even if it was error for the trial court to admit the messages under the co-conspirator exclusion to the rule against hearsay, Neira's messages are nonetheless not hearsay. At the hearing outside the presence of the jury, the State argued that "the statements during the night are made in furtherance of that conspiracy because she was trying to get [Esparza] to [t]he Edge Apartments to make that plan happen." In other words, Neira's statements were not being used to prove the truth of the matter asserted, but their effect on Esparza. *See McNeil v. State*, 452 S.W.3d 408, 419 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("Statements offered only to show their effect on the listener are not hearsay." (quoting *Hernandez v. State*, No. 01-08-00306-CR, 2009 WL 1331649, at *6 (Tex. App.—Houston [1st Dist.] May 14, 2009, pet. ref'd) (mem. op., not designated for publication)). Indeed, rather than attempting to prove the truth of the matter asserted, the State represented that several of Neira's messages to Esparza were dishonest. *See* TEX. R. EVID. 801(c) (defining "matter asserted" as "any matter a declarant explicitly asserts" and "any matter implied by a statement, if the probative value of the statement as offered flows from the declarant's belief about the matter"); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) ("An extrajudicial statement or writing which is offered for the purpose of showing *what* was said rather than for the *truth* of the matter stated therein does not constitute hearsay."); *Jones v. State*, 466 S.W.3d 252, 263 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) ("A statement is not hearsay if its relevancy does not hinge on its truthfulness.").

And finally, even if the trial court erred by admitting the messages, Esparza testified to their substance—e.g., Neira agreed to go to Perfect Score, Neira needed him

11

to go to the Edge Apartments, etc.—without any objection. *See Guana v. State*, 534 S.W.3d 7, 10 (Tex. App.—San Antonio 2017, no pet.) ("An error, if any, in the admission of evidence is cured where the same evidence comes in elsewhere without objection." (cleaned up)). We overrule Garcia's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
20th day of July, 2023.

12